IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

2008 MAR 18 P 3: 31

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| AXA DISTRIBUTORS, LLC and AXA ADVISORS, LLC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO.: |
| GAYLE S. BULLARD, PEGGY J. COLE, BEVERLY L. DAVIS, JESSE D. DEAN, HANS D. ERBSKORN, CHARLENE B. ERBSKORN, RABON W. HARRISON, RUTH K. HARRISON, KENNETH W. JOYNER, SARAH A. MARTIN, SARAH MCCORD, NINA SUE NEW, MARY HARRIETT PATTON, FREDDY QUATTLEBAUM, ANITA CAROL SHIRAH, WILLA C. STOREY, JEANETTE S. SUTHERLAND, MARY E. TODD, BETTY M. VANN, HELEN S. HALL WALWORTH, DEBRA REBECCA WHITE, PHEOBIE D. WILSON, CHARLES H. WOODHAM, JERRY MIMS, FLOYD STARLING, VIRGINIA STARLING, F. TERRY WALDEN, REUBEN S. SHELLEY, JUNE K. SHELLEY, SHIRLEY J. WALKER, DONALD W. HENDLEY, EDWARD L. HINSON, JEANETTE C. HINSON, JACK R. PERRY, HAZEL J. ODOM, CAROLYN H. SAUNDERS, ROY W. SAUNDERS, JAMES H. HAUSMAN, JAMES R. LITTLE, LINDA D. LITTLE, EARL T. SENN, EDNA SENN, DANNY L. SNELL, JACQUELINE P. DRAUGHON, and GAYLE O. HUDSON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:08 cv 188 |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION AND DECLARATORY JUDGMENT

Plaintiffs AXA Distributors, LLC ("AXA Distributors") and AXA Advisors, LLC ("AXA Advisors"), by their undersigned counsel, for their Complaint against Defendants, state as follows:

## NATURE OF THE ACTION

1.      This is an action to enjoin an arbitration proceeding that has been filed by Defendants against Plaintiffs before the Financial Industry Regulatory Authority ("FINRA"), styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al.*, FINRA Arbitration No. 08-00280.  Plaintiffs have no legal obligation to arbitrate the FINRA dispute filed by the Defendants because (1) there is no agreement to arbitrate between Defendants and the Plaintiffs, and (2) the Defendants were not customers of the Plaintiffs or their associated persons, nor does Defendants' arbitration proceeding arise in connection with Plaintiffs' business activities.  Accordingly, Plaintiffs seek preliminary and permanent injunctive relief to prevent Defendants from proceeding with their claims against AXA Advisors and AXA Distributors in the arbitration styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al.*, FINRA Arbitration No. 08-00280.  In addition, Plaintiffs seek a declaratory judgment that there is (1) no agreement to arbitrate between the Plaintiffs and Defendants, (2) no legal obligation requiring Plaintiffs to arbitrate with the Defendants, and therefore (3) Defendants' claims against the Plaintiffs in the arbitration proceeding must be dismissed.

## PARTIES

2.      Plaintiff AXA Distributors is a limited liability corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York.

3.      Plaintiff AXA Advisors is a limited liability corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York.

4.      Upon information and belief, Defendants Gayle S. Bullard, Peggy J. Cole,

Beverly L. Davis, Jesse D. Dean, Hans D. Erbskorn, Charlene B. Erbskorn, Rabon W. Harrison, Ruth K. Harrison, Kenneth W. Joyner, Sarah A. Martin, Sarah McCord, Nina Sue New, Mary Harriett Patton, Freddy Quattlebaum, Anita Carol Shirah, Willa C. Storey, Jeanette S. Sutherland, Mary E. Todd, Betty M. Vann, Helen S. Hall Walworth, Debra Rebecca White, Pheobie D. Wilson and Charles H. Woodham are adult residents of the State of Alabama, Houston County.

5.      Upon information and belief, Defendants Jerry Mims, Floyd Starling, Virginia Starling, F. Terry Walden, Reuben S. Shelley, June K. Shelley, Shirley J. Walker, Donald W. Hendley, Edward L. Hinson, Jeanette C. Hinson, are adult residents of the State of Alabama, Henry County.

6.      Upon information and belief, Defendants Jack R. Perry, Hazel J. Odom, Carolyn H. Saunders and Roy W. Saunders are adult residents of the State of Alabama, Geneva County.

7.      Upon information and belief, Defendants James H. Hausman, James R. Little, Linda D. Little, Earl T. Senn and Edna Senn, are adult residents of the State of Alabama, Dale County.

8.      Upon information and belief, Defendants Danny L. Snell and Jacqueline P. Draughon are adult residents of the State of Florida, Jackson County.

9.      Upon information and belief, Defendant Gayle O. Hudson is an adult resident of the State of Florida, Polk County.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that this is an action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs, but in an amount that is not readily

ascertainable.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because twenty-five of the Defendants reside in this District, and the events giving rise to this action, or a substantial part thereof, occurred in this District.

## FACTS

12.    On or about January 30, 2008, Defendants filed a Statement of Claim in FINRA Arbitration No. 08-00280 against Plaintiffs, commencing the arbitration proceeding at issue here.[1]    *See* Statement of Claim, attached hereto as Exhibit A.  Defendants seek an arbitration hearing in Birmingham, Alabama.  In the arbitration, Defendants seek monetary damages in excess of $1,000,000, asserting claims for fraud, suppression, negligent training and supervision, breach of contract, conversion, "Alabama securities fraud" and "unsuitable investment/suitability review."

13.    In the Statement of Claim, Defendants allege that their claims arise out of the purchase of certain variable annuity investments from the Plaintiffs in reliance on representations made by the Plaintiffs.  The Statement of Claim further alleges that the Plaintiffs did not provide Defendants with a prospectus containing proper disclosures regarding their variable annuity investments.

14.    Contrary to the Statement of Claim's allegations, neither of the Plaintiffs sold the annuities at issue to the Defendants.  The Defendants have never been customers of AXA

---

[1] In addition to Plaintiffs, AXA Equitable Life Insurance Company "AXA Equitable" is a named Respondent in the arbitration proceeding. AXA Equitable, however, is not a FINRA member firm. Accordingly, upon receipt of the Claimants' Statement of Claim, FINRA notified AXA Equitable that, as a non-member firm, it was not required to submit to such an arbitration proceeding. In fact, AXA Equitable responded through counsel by declining to submit to FINRA's jurisdiction in that proceeding. AXA Equitable therefore does not join in this Complaint, and to the extent that Defendants intend to continue to pursue their claims against AXA Equitable, they will be required to do so in court. Also, Ann S. Holman is a Claimant in the arbitration proceeding. She is not a named Defendant in this action because she was an associated person of Raymond James Financial Services, Inc. during the relevant time period; as such, Holman may be entitled to rely upon different FINRA rules to require a panel of arbitrators initially to determine at least the eligibility of her claims for arbitration against the Plaintiffs.

Advisors or AXA Distributors, their agents or representatives. Neither AXA Advisors nor AXA Distributors has ever conducted business with any of the Defendants.

15.     Each of the Defendants purchased the variable annuity contracts at issue through Maxine Chappell and Ann Holman, former registered representatives with Raymond James Financial Services, Inc.

16.     Neither Maxine Chappell nor Ann Holman has ever been an agent, employee, representative or associated person of the Plaintiffs. In addition, neither Maxine Chappell nor Ann Holman has ever been appointed with the Plaintiffs as a representative or agent. Instead, both Maxine Chappell and Ann Holman were appointed with AXA Equitable as non-exclusive insurance agents for the purpose of selling AXA Equitable products.

17.     In connection with completing an application for the variable annuity contracts at issue, each of the Defendants represented that they received a variable annuity prospectus. AXA Equitable (not AXA Distributors or AXA Advisors) published the prospectus received by the Defendants when they purchased their variable annuities. Each of the Defendants' variable annuity contracts were issued by AXA Equitable and not AXA Distributors or AXA Advisors. Neither of the Plaintiffs is an issuer of variable annuities.

18.     AXA Distributors markets AXA Equitable Life Insurance Company annuities at a wholesale level. AXA Distributors does not engage in retail sales of AXA Equitable Life Insurance Company products. AXA Distributors does not provide order execution for retail clients. Accordingly, AXA Distributors has never offered an investment for sale to the Defendants.

19.     AXA Advisors is a brokerage firm which engages in retail sales of AXA Equitable Life Insurance Company products, among other investments, but it had no

involvement whatsoever in the sale of the annuities at issue to the Defendants.

20.    None of the Defendants has purchased an investment from the Plaintiffs. The Plaintiffs have not provided any brokerage services to any of the Defendants.

21.    None of the Defendants has ever submitted investment applications to the Plaintiffs, and the Plaintiffs have never entered into a contract with any of the Defendants. The Plaintiffs have never maintained accounts nor possessed any cash or securities of the Defendants. In addition, the Plaintiffs have never provided account statements or confirmations to the Defendants. The Plaintiffs have never sent written correspondence to the Defendants in connection with the annuity contracts at issue in this action.

22.    There is no written or oral agreement to arbitrate between the Plaintiffs and Defendants, and the Plaintiffs have never agreed to arbitrate any claims with the Defendants.

23.    The Plaintiffs are FINRA members.

24.    In connection with their FINRA membership, Plaintiffs agree to arbitrate certain disputes between their customers and themselves or their associated persons. FINRA Code of Arbitration Procedure Rule 12200. Plaintiffs are only required to arbitrate such customer disputes when they arise in connection with Plaintiffs' business activities. FINRA Code of Arbitration Procedure Rule 12200.

25.    The Defendants were not customers of the Plaintiffs. The Defendants were not customers of Plaintiffs' associated persons. Defendants' arbitration proceeding does not arise in connection with Plaintiffs' business activities. Plaintiffs therefore have no legal obligation to arbitrate the FINRA dispute filed by the Defendants.

26.    Injunctive relief is necessary and appropriate here because in the absence of an injunction preventing Defendants from proceeding with the arbitration against the Plaintiffs,

- 6 -

Plaintiffs will suffer irreparable harm. Plaintiffs will be forced to litigate a dispute in a forum to which they never consented and to expend resources and effort on litigating parallel proceedings. Moreover, the harm suffered by the Plaintiffs in the absence of injunctive relief clearly outweighs the harm the Defendants will suffer if enjoined from arbitrating a non-arbitrable dispute.

**COUNT ONE**
**PRELIMINARY AND PERMANENT INJUNCTION**

27.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint as if set forth fully herein.

28.     If Plaintiffs are forced to arbitrate their dispute with the Defendants, Plaintiffs face a substantial threat of irreparable harm resulting from their expenditure of unnecessary resources and effort in order to litigate a dispute in an improper forum.

29.     Absent entry of a preliminary and permanent injunction restraining and enjoining Defendants, their agents, attorneys, and all persons acting in concert or participation with them, or similarly situated with them, from proceeding with their claims against AXA Advisors and AXA Distributors in the arbitration styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al.*, FINRA Arbitration No. 08-00280, Plaintiffs reasonably believe that they will incur substantial time and expense in defending the arbitration proceeding.

30.     FINRA's procedures do not adequately, if at all, protect Plaintiffs from the irreparable harm resulting from the expenditure of unnecessary resources attendant to the arbitration proceeding.

**COUNT TWO**
**DECLARATORY JUDGMENT**

31.    Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint as if set forth fully herein.

32.    An actual and present controversy within the jurisdiction of this Court has arisen between the parties with respect to whether the Defendants are entitled to arbitrate their dispute with the Plaintiffs.

33.    Defendants have commenced an arbitration asserting the entitlement to arbitrate their dispute with the Plaintiffs.

34.    There is no written or oral agreement to arbitrate between the Plaintiffs and Defendants.  In addition, the Defendants were not customers of Plaintiffs or Plaintiffs' associated persons.  Defendants' arbitration proceeding does not arise in connection with Plaintiffs' business activities.  Plaintiffs therefore have no legal obligation to arbitrate the FINRA dispute filed by the Defendants.

35.    By reason of the foregoing, Plaintiffs are entitled to a declaratory judgment that:

    (a)    there is no agreement to arbitrate between Plaintiffs and Defendants;

    (b)    Plaintiffs have no legal obligation to arbitrate the FINRA dispute filed by the Defendants; and

    (c)    Defendants' claims against the Plaintiffs in the arbitration styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al.*, FINRA Arbitration No. 08-00280, must be dismissed.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

    (a)    issue a preliminary and permanent injunction restraining and enjoining Defendants, their agents, attorneys, and all persons acting in concert or participation with them,

or similarly situated with them, from proceeding with their claims against AXA Advisors and AXA Distributors in the arbitration styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al.*, FINRA Arbitration No. 08-00280; and

    (b)    issue a declaratory judgment that:

        (i)    there is no agreement to arbitrate between Plaintiffs and Defendants;

        (ii)    Plaintiffs have no legal obligation to arbitrate the FINRA dispute filed by the Defendants;

        (iii)    Defendants' claims against the Plaintiffs in the arbitration styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al.*, FINRA Arbitration No. 08-00280, must be dismissed;

    (c)    award to Plaintiffs their reasonable attorney's fees and costs incurred in connection with this proceeding; and

    (d)    grant Plaintiffs any other and further relief that the Court deems just and proper.

Dated this 18th day of March, 2008.

Respectfully submitted,

A. Inge Selden III (SEL003)
John N. Bolus (BOL022)
Andrea Morgan Greene (GRE102)

Attorneys for Plaintiffs
AXA Distributors, LLC and AXA Advisors, LLC

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2602
(205) 254-1000

## VERIFICATION

The foregoing facts are true and correct.

Nick Lane
AXA Advisors, LLC

Subscribed and sworn to be this _13_ day of March, 2008.

_Susan J Stoveland_
NOTARY PUBLIC

(AFFIX SEAL)

SUSAN J. STOVELAND
Notary Public - State of New York
No. 01ST6171954
Qualified in Dutchess County
My Commission Expires July 30, 20_11_

My commission expires: _____

## VERIFICATION

The foregoing facts are true and correct.

_____
William C. Miller
AXA Distributors, LLC

Subscribed and sworn to be this __12__ day of March, 2008.

_____
NOTARY PUBLIC

(AFFIX SEAL)

**SUSAN J. STOVELAND**
**Notary Public - State of New York**
**No. 01ST6171954**
**Qualified in Dutchess County**
**My Commission Expires July 30, 20_11_**

My commission expires: _____

**VERIFICATION**

The foregoing facts are true and correct.

_Sidney J. Smith_
Sidney J. Smith
AXA Equitable Life Insurance Company

Subscribed and sworn to be this _____ day of March, 2008.

_Susan J. Stoveland_
NOTARY PUBLIC

SUSAN J. STOVELAND
Notary Public - State of New York
No. 01ST6171954
Qualified in Dutchess County
Commission Expires July 30, 20 11

(AFFIX SEAL)

My commission expires: _____

# FINRA
## IN THE MATTER OF ARBITRATION BETWEEN

GAYLE S. BULLARD,
PEGGY J. COLE,
BEVERLY L. DAVIS,
JESSE D. DEAN,
JACQUELINE P. DRAUGHON,
HANS D. ERBSKORN, CHARLENE
B. ERBSKORN,
HELEN S. HALL WALWORTH,
RABON W. HARRISON,
RUTH K. HARRISON,
JAMES H. HAUSMAN,
DONALD W. HENDLEY,
EDWARD L. HINSON,
JEANETTE C. HINSON, ANN S. HOLMAN,
GAYLE O. HUDSON,
KENNETH W. JOYNER, JAMES R. LITTLE,
LINDA D. LITTLE, SARAH A. MARTIN,
SARAH MCCORD, JERRY
MIMS, NINA SUE NEW,
HAZEL J. ODOM,
MARY HARRIETT PATTON, JACK
R. PERRY, FREDDY QUATTLEBAUM,
CAROLYN H. SAUNDERS,
ROY W. SAUNDERS, EARL T. SENN,
EDNA SENN, REUBEN S. SHELLEY,
JUNE K. SHELLEY,
ANITA CAROL SHIRAH,
DANNY L. SNELL, FLOYD
STARLING, VIRGINIA STARLING, WILLA
C. STOREY, JEANETTE S. SUTHERLAND,
MARY E. TODD, BETTY M. VANN,
F. TERRY WALDEN,
SHIRLEY J. WALKER,
DEBRA REBECCA WHITE,

Arbitration Number:

_08-00280_

PHEOBIE D. WILSON,
CHARLES H. WOODHAM,

     Claimants,

     v.

AXA EQUITABLE LIFE INSURANCE COMPANY,
f/k/a THE EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES, AXA
DISTRIBUTORS, LLC, f/k/a
EQUITABLE DISTRIBUTORS, LLC, and AXA
ADVISORS, LLC, f/k/a EQ FINANCIAL
CONSULTANTS, INC.,

     Respondents.

## STATEMENT OF CLAIM

### Parties:

Claimants, Gayle S. Bullard (Policy #98683798), Peggy J. Cole (Policy #301675095), Beverly L. Davis (Policy #301675122), Jesse D. Dean (Policy #300625293), Hans D. Erbskorn (Policy #301675082 and Joint Policy #301675094), Charlene B. Erbskorn (Policy #301675087 and Joint Policy #301675094), Rabon W. Harrison (Policy #300611148, Policy #300611152, Joint Policy #301675243, and Joint Policy #300611544), Ruth K. Harrison (Policy #301675032, Policy #300611147, Joint Policy #301675243, and Joint Policy #300611544), Ann S. Holman (Policy #98676386), Kenneth W. Joyner (Policy #301675294), Sarah A. Martin (Policy #99632664), Sarah McCord (Policy

#302675034), Nina Sue New (Policy #99633083), Mary Harriett Patton (Policy #300639746), Freddy Quattlebaum (Policy #300613076), Anita Carol Shirah (Policy #99645053), Willa C. Storey (Policy #300605531), Jeanette S. Sutherland (Joint Policy #98676810), Helen S. Hall Walworth (Joint Policy #98676810), Mary E. Todd (Policy #301675338), Betty M. Vann (Policy #300689024), Pheobie D. Wilson (Policy #99621080), Debra Rebecca White (Policy #301675107), and Charles H. Woodham (Policy #300605999), are individuals over the age of nineteen (19) who reside in Houston County, Alabama.

Claimants, Floyd Starling (Policy #300607598 and Joint Policy #300607965), Virginia Starling (Policy #300610853 and Joint Policy #300607965), Jerry Mims (Policy #99625015), F. Terry Walden (Policy #300616978), June K. Shelley (Policy #300602997), Reuben S. Shelley (Policy #300602995 and Policy #98687385), Shirley J. Walker (Policy #300619943), Donald W. Hendley (Policy #99630183), Edward L. Hinson (Policy #300604193), and Jeanette C. Hinson (Policy #300604195) are individuals over the age of nineteen (19) who reside in Henry County, Alabama. Carolyn H. Saunders (Joint Policy #300628733) and Roy W. Saunders (Joint Policy #300628733, Policy #300628734) are individuals over the age of nineteen (19) who reside in Geneva County, Alabama.

James H. Hausman (Policy #97654785), James R. Little (Policy #300636724 and Joint Policy #300636678), Linda D. Little (Policy #300636722 and Joint Policy #300636678), Earl T. Senn (Policy #300607502), and Edna Senn (Policy #300607501 and Policy #300607503), are individuals over the age of nineteen (19) who reside in Dale County, Alabama.

Jack R. Perry (Policy #300622548 and Policy #98682661) and Hazel J. Odom (Joint Policy #99619998) are individuals over the age of nineteen (19) who reside in Geneva County, Alabama.  Danny L. Snell (Policy #300616278) and Jacqueline P. Draughon (Policy #99630016) are individuals over the age of nineteen (19) who reside in Jackson County, Florida.  Gayle O. Hudson (Policy #300628990) is an individual over the age of nineteen (19) who resides in Polk County, Florida.

AXA Equitable Life Insurance Company f/k/a Equitable Life Assurance Society of the United States (hereinafter "Equitable Life") is a stock life insurance company that is among the largest life insurance companies in the United States, and is a wholly-owned subsidiary of The Equitable Companies Incorporated.

AXA Distributors, LLC f/k/a Equitable Distributors, LLC, (hereinafter "EDL") AND AXA Advisors, LLC f/k/a EQ Financial Consultants, Inc.

(hereinafter "EQF") are wholly owned subsidiaries of Equitable Life and have responsibility for sales and marketing functions for the Certificates issued by Equitable Life. EDL and EQF are also the distributors for Equitable Life annuity products, such as the Accumulator$^{sm}$, with its baseBUILDER® and Income Manager® options. EDL and EQF are broker-dealers registered with the Securities and Exchange Commission and each is a member of the Financial Industry Regulatory Authority (FINRA).

Joinder in this arbitration is appropriate because all Claimants' claims arise out of or relate to two series of transactions and occurrences with regard to all Respondents. The claims also present common questions of law and/or fact.

### Facts

From 1998 to 2000, agents of Respondents made representations to the Claimants that they could purchase a seven or ten year investment from Respondents which had a guaranteed rate of interest of either 5% or 6%, if held to maturity, but that the return could be greater if the stock market out-performed this minimum guaranteed rate. Respondents represented to Claimants that the 5% or 6% (as the case may be) interest rate would be compounded annually if held to maturity. Respondents represented that the Claimants would receive "the best of both worlds," because they were guaranteed a 5% or 6% return even if the stock

market were to decline. Thus, they represented, the investment could not lose value.

All of the Claimants made clear to the Respondents that, while the minimum guaranteed rate of return was attractive, they needed access to their monies after maturity and were, therefore, not interested in the annuity aspect of the investment. Respondents represented to Claimants that there was 90% liquidity on the investment if held to maturity, and reassured Claimants that they could take a 90% lump sum payment out of their investment, without penalty, at the conclusion of the seven or ten year maturity period.

Respondents suppressed and concealed from Claimants that they would not guarantee the Claimants the 5% or 6% interest rate associated with this variable annuity product. Unbeknownst to Claimants the investment involved risk, including possible loss of principal. Respondents also concealed from the Claimants that they could not have complete access to their investment after the seven or ten year liquidity period.

Respondents did not provide the Claimants with a prospectus providing complete, meaningful disclosures of the investment, including its options, risks, fees, expenses, and method of assuring a 90% lump sum pay out without penalty at the close of the maturity period. Relying upon the representations of Respondents,

all of the Claimants transferred money to the variable annuity products, including, for some Claimants, money from IRAs.

After investing their monies with Respondents, Claimants periodically received statements regarding their investments. On numerous occasions, Claimants questioned one or more of the Respondents regarding their accounts. On each such occasion, Respondents reassured the Claimants that the amounts shown on the statements did not accurately reflect the value of their investments.

Less than two years ago, the Claimants discovered that, contrary to the representations and continued assurances of the Respondents, they were in fact not guaranteed a 5% or 6% (as the case may be) return on their investments, and that they would not have 90% access to their investments after seven or ten years, or at maturity, without penalty. They further discovered that they were required to annuitize their entire investment and thus could only receive a portion of their investments.

## Claims

### Fraud

Respondents, through their agents, servants, and employees, are liable for making misrepresentations of material fact to Claimants, including that Claimants were guaranteed a return on their investment after either seven or ten years of

either 5% or a 6% (the guaranteed minimum interest rate); that after seven or ten years (the applicability period to maturity), that Claimants would have access to 90% of their investment plus guaranteed interest (at a minimum), and that Claimants could cash in their investment for a lump sum payment without penalty if they so desired. These representations were false, and Respondents either knew they were false, recklessly misrepresented the facts without true knowledge of the facts, or misrepresented the facts by mistake but with the intention that Claimants would rely upon them. Relying on those representations, Claimants invested monies with Respondents.

Through common misrepresentation, Respondents deceitfully tricked Claimants and others into purchasing annuities. Claimants were prevented from learning about their investments because Respondents deliberately and fraudulently withheld such information and deliberately and fraudulently responded falsely to Claimants' inquiries.

Because of the Respondents' fraud and misrepresentations, Claimants paid for an investment which was not what they bargained for and did not earn the promised applicable 5% or 6% interest on their investments. The Claimants are unable to cash out their investments after either the seven or ten year period for maturity without penalty. Their investments have not performed as represented by

Respondents, and the Claimants have lost the opportunity to make alternative investments with their funds. Claimants acted as a direct result of the non-disclosure/suppression, misrepresentation of material fact, and/or fraudulent concealment and purchased the investment product of the Respondents.

## Suppression

The Respondents are fiduciaries of Claimants and are liable for fraudulently suppressing and failing to disclose to the Claimants that they could lose money on their investment, that they were not guaranteed the applicable rate of return, either 5% or 6%, and that they would not have access to 90% of their investments without penalty after seven or ten years, or the applicable rate of interest. The Respondents are further liable for failing to provide the Claimants with a prospectus with meaningful disclosure regarding all aspects of their investments either before or at the time of sale.

## Negligent Training and Supervision

Agents, servants, and/or employees of the Respondents negligently, wantonly, and/or willfully failed to adequately regulate, audit, supervise and/or monitor the activities of their agents and that Respondents negligently failed to detect and/or deter the misrepresentations of their agents. Further, Respondents

knew of should have known of the misrepresentations of their agents. Respondents impliedly authorized or ratified the conduct of their agents, and the acts of their agents were calculated to or did benefit Respondents. Respondents are thus liable for violations of both the Alabama common law and the NASD Rule of Fair Practice 3010.

## Breach of Contract

Under the terms of their contracts, the Claimants were supposed to receive an investment product with a guaranteed return of either 5% of 6% compounded annually after either seven or ten years, and have 90% access to a lump sum payout of their investment, including the 5% or 6% guaranteed return compounded annually, without penalty after seven or ten years. Respondents are liable for breaching their contracts with Claimants in that they did not provide Claimants with the product they bargained for.

## Conversion

Respondents are liable for wantonly, willfully, and/or maliciously converting monies from Claimants' accounts.

## Alabama Securities Fraud

Respondents are liable to Claimants for employing a device, scheme or artiface to defraud, making untrue statements of a material fact or omitting to state

a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, and/or engaging in an act, practice or course of business which operates as to fraud or deceit.    The Claimants were not aware of the false statements and/or omissions until less than two years ago and had no reason to know of them, and they could not, even in the exercise of reasonable care, have known about the false statements and/or omissions.

### Unsuitable Investment/Suitability Review

The Respondents failed to conduct a suitability review before selling any of the Claimants their variable annuities.  Because the Claimants needed to access their investments without penalty after the maturity period, the Respondents should not have allowed the sale of a variable annuity with a payout penalty at the end of the maturity period.  Further, the Respondents should not have sold the Claimants an investment that could lose value, when each of the Claimants required an investment that would not lose value.  Respondents are liable for selling Claimants unsuitable investments and for failing to conduct a suitability review under Rule 2310 of the NASD Rules of Fair Practice.

As a direct result of the above behavior, Claimants have been damaged. Claimants demand judgment against Respondents for compensatory and punitive

damages in excess of $1 million, as may be proven at arbitration, plus interest,

forum fees, attorney fees, witness and production fees, other case-related costs, and

such other relief as may be just and proper.

Respectfully submitted,

One of the Attorneys for Claimants

OF COUNSEL:
Andrew P. Campbell (CAM006)
Caroline Smith Gidiere (SMI209)
CAMPBELL, GIDIERE, LEE
SINCLAIR & WILLAIMS, PC
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
(205) 803-0051 phone
(205) 803-0053 fax
acampbell@cgl-law.com
cgidiere@cgl-law.com

## PLEASE SERVE THE FOLLOWING RESPONDENTS BY CERTIFIED MAIL:

**AXA EQUITABLE LIFE INSURANCE COMPANY**
**f/k/a THE EQUITABLE LIFE ASSURANCE SOCIETY**
**OF THE UNITED STATES**
1290 Avenue of the Americas, 4th Floor
New York, NY 10104


**AXA DISTRIBUTORS, LLC, f/k/a**
**EQUITABLE DISTRIBUTORS, LLC**
1290 Avenue of the Americas, 7th Floor
New York, NY 10104

**AXA ADVISORS, LLC, f/k/a**
**EQ FINANCIAL CONSULTANTS, INC.**
1290 Avenue of the Americas, 12th Floor
New York, NY  10104

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602004363
Cashier ID: khaynes
Transaction Date: 03/18/2008
Payer Name: MAYNARD COOPER AND GALE
-----------------------------------
CIVIL FILING FEE
 For: MAYNARD COOPER AND GALE
 Case/Party: D-ALM-1-08-CV-000188-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 1083991
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

AXA DISTRIBUTORS V. BULLARD ET AL
```