**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| AXA DISTRIBUTORS,<br>LLC and AXA ADVISORS, LLC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| GAYLE S. BULLARD, et al., | )<br>) |
| Defendants. | ) |

CIVIL ACTION NO.: 1:08-cv-00188

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

This is an action to enjoin an arbitration proceeding that has been filed by Defendants against Plaintiffs before the Financial Industry Regulatory Authority ("FINRA"), styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al*., FINRA Arbitration No. 08-00280. Plaintiffs seek preliminary and permanent injunctive relief in order to prevent Defendants from proceeding with their claims against the Plaintiffs in the arbitration.

Defendants' arbitration proceeding is due to be enjoined because Plaintiffs have no legal obligation to arbitrate the Defendants' claims. The law governing this case is unquestionably clear that parties cannot be required to submit to arbitration where there is no agreement between them to do so. Here, there is no written or oral agreement to arbitrate between Defendants and the Plaintiffs. In addition, the Defendants were not customers of the Plaintiffs or their associated persons, nor does Defendants' arbitration proceeding arise in connection with Plaintiffs' business activities. As such, the law does not imply an agreement to arbitrate between the parties.

Accordingly, Plaintiffs seek a preliminary and permanent injunction restraining and enjoining Defendants, their agents, attorneys, and all persons acting in concert or participation with them, or similarly situated with them, from proceeding with their claims pending against the Plaintiffs in the arbitration styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al.*, FINRA Arbitration No. 08-00280. For the reasons set forth below, the likelihood of Plaintiffs' success on the merits is substantial. Moreover, forcing Plaintiffs to litigate in an arbitration forum to which they have not agreed constitutes *per se* irreparable harm, which far exceeds any potential harm to the Defendants. Thus, Plaintiffs' motion for preliminary injunctive relief should be granted.

## STATEMENT OF FACTS

On or about January 30, 2008, Defendants filed a Statement of Claim in FINRA Arbitration No. 08-00280 against Plaintiffs, commencing the arbitration proceeding at issue here.[1] *See* Statement of Claim, attached hereto as Exhibit A. Defendants seek an arbitration hearing in Birmingham, Alabama. In the arbitration, Defendants seek monetary damages in excess of $1,000,000, asserting claims for fraud, suppression, negligent training and supervision, breach of contract, conversion, "Alabama securities fraud" and "unsuitable investment/suitability review."

In the Statement of Claim, Defendants allege that their claims arise out of the purchase of

---

[1] In addition to Plaintiffs, AXA Equitable Life Insurance Company "AXA Equitable" is a named Respondent in the arbitration proceeding. AXA Equitable, however, is not a FINRA member firm. Accordingly, upon receipt of the Claimants' Statement of Claim, FINRA notified AXA Equitable that, as a non-member firm, it was not required to submit to such an arbitration proceeding. Affidavit of Sidney Smith at ¶8, attached as Exhibit B. In fact, AXA Equitable responded through counsel by declining to submit to FINRA's jurisdiction in that proceeding. *Id*. AXA Equitable therefore does not join in this proceeding, and to the extent that Defendants intend to continue to pursue their claims against AXA Equitable, they will be required to do so in court. Also, Ann S. Holman is a Claimant in the arbitration proceeding. She is not a named Defendant in this action because she was an associated person of Raymond James Financial Services, Inc. during the relevant time period; as such, Holman may be entitled to rely upon different FINRA rules to require a panel of arbitrators initially to determine at least the eligibility of her claims for arbitration against the Plaintiffs.

certain variable annuity investments from the Plaintiffs in reliance on representations made by the Plaintiffs. The Statement of Claim further alleges that the Plaintiffs did not provide Defendants with a prospectus containing proper disclosures regarding their variable annuity investments.

Contrary to the Statement of Claim's allegations, neither of the Plaintiffs sold the annuities at issue to the Defendants. The Defendants have never been customers of AXA Advisors or AXA Distributors, their agents or representatives. Neither AXA Advisors nor AXA Distributors has ever conducted business with any of the Defendants. Rather, each of the Defendants purchased the variable annuity contracts at issue through Maxine Chappell and Ann Holman, former registered representatives with Raymond James Financial Services, Inc. Affidavit of Sidney Smith at ¶5. Neither Maxine Chappell nor Ann Holman has ever been an agent, employee, representative or associated person of the Plaintiffs. Affidavit of William C. Miller at ¶7, attached hereto as Exhibit C. In addition, neither Maxine Chappell nor Ann Holman has ever been appointed with the Plaintiffs as a representative or agent. *Id*. Instead, both Maxine Chappell and Ann Holman were appointed with AXA Equitable as non-exclusive insurance agents for the purpose of selling AXA Equitable products. Affidavit of Sidney Smith at ¶5.

Each of the Defendants' variable annuity contracts were issued by AXA Equitable and not AXA Distributors or AXA Advisors. Affidavit of Sidney Smith at ¶4. In connection with completing an application for the variable annuity contracts at issue, each of the Defendants represented that they received a variable annuity prospectus. Affidavit of Sidney Smith at ¶6. AXA Equitable (not AXA Distributors or AXA Advisors) published the prospectus received by the Defendants when they purchased their variable annuities. Affidavit of Sidney Smith at ¶6.

AXA Distributors markets AXA Equitable Life Insurance Company annuities at a wholesale level. Affidavit of William C. Miller at ¶3. AXA Distributors does not engage in retail sales of AXA Equitable Life Insurance Company products. *Id*. AXA Distributors does not provide order execution for retail clients. Accordingly, AXA Distributors has never offered an investment for sale to the Defendants. *Id*. AXA Advisors is a brokerage firm which engages in retail sales of AXA Equitable Life Insurance Company products, among other investments, but it had no involvement whatsoever in the sale of the annuities at issue to the Defendants.

None of the Defendants has purchased an investment from the Plaintiffs. Affidavit of William C. Miller at ¶5. In addition, the Plaintiffs have not provided any brokerage services to any of the Defendants. *Id*.

None of the Defendants has ever submitted investment applications to the Plaintiffs, and the Plaintiffs have never entered into a contract with or maintained an account for the Defendants. Affidavit of William C. Miller at ¶6. The Plaintiffs have never possessed any cash or securities of the Defendants. *Id*. In addition, the Plaintiffs have never provided account statements or confirmations to the Defendants. *Id*. The Plaintiffs have never sent written correspondence to the Defendants in connection with the annuity contracts at issue. *Id*.

There is no written or oral agreement to arbitrate between the Plaintiffs and Defendants, and the Plaintiffs have never agreed to arbitrate any claims with the Defendants. The Plaintiffs are, however, FINRA members. In connection with their FINRA membership, Plaintiffs agree to arbitrate certain disputes between their customers and themselves or their associated persons. FINRA Code of Arbitration Procedure, Rule 12200. However, Plaintiffs are only required to arbitrate such customer disputes when they arise in connection with Plaintiffs' business activities. FINRA Code of Arbitration Procedure Rule 12200. The Defendants' claims, however,

do not fit within Rule 12200 for two reasons.  First, the Defendants were never customers of the Plaintiffs or their associated persons.  Second, the Defendants' arbitration proceeding does not arise in connection with Plaintiffs' business activities.  At best, Defendants' arbitration proceeding arises in connection with the business activities of AXA Equitable, the issuer of Defendants' variable annuities and a separate entity from AXA Advisors and AXA Distributors. Plaintiffs therefore have no legal obligation to arbitrate the FINRA dispute filed by the Defendants, and injunctive relief is necessary to prevent the Defendants from proceeding against the Plaintiffs in arbitration.

## ARGUMENT

A fundamental principle governing the arbitrability of disputes is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582 (1960); *see AT&T Tech. v. Commc'ns Workers of Am*., 475 U.S. 643, 648 (1986); *Scott v. Prudential Sec., Inc*., 141 F.3d 1007, 1011 (11th Cir. 1998).  Therefore, the issue of arbitrability, *i.e*., whether an agreement creates a duty for the parties to arbitrate a particular dispute, "is undeniably an issue for judicial determination."  *AT&T Tech.*, 475 U.S. at 649. Accordingly, federal courts routinely grant declaratory and preliminary injunctive relief when a party seeks to arbitrate a non-arbitrable dispute.  *See, e.g. Wheat, First Securities Inc. v. Green,* 993 F.2d 814, 816 (11th Cir. 1993). *See, e.g. Wheat, First Securities Inc. v. Green,* 993 F.2d 814, 816 (11th Cir. 1993); *Gilbralter Sec. Co. v. Bitter*, No. 97-1587-CIV-T-17B, 1997 WL 728086, *5 (M.D. Fla. 1997); *Dean Witter Reynolds, Inc. v. Goyette*, 25 F. Supp. 2d 1344, 1347 (M.D. Fla. 1996); *Dean Witter Reynolds, Inc. v. Pollack*, No. 96-6397, 1996 WL 1044969, *4 (S.D. Fla. 1996); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 383 (11th Cir.

1995).

In the Eleventh Circuit and elsewhere, there are four prerequisites for a preliminary injunction: (1) the likelihood of plaintiffs' success on the merits; (2) a substantial likelihood of irreparable injury if relief is denied; (3) threatened injury to the movant that outweighs any damage that the preliminary injunction might cause to the opposing party; and (4) the public interest will be served by the injunction. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002). Each of those criteria are satisfied in this case, and the Plaintiffs are thus entitled to a preliminary injunction effecting a stay of the Defendants' arbitration proceeding pending this Court's judicial resolution of Plaintiffs' Complaint for permanent injunctive relief.

## I.    THE ISSUE OF ARBITRABILITY IS INDISPUTABLY ONE FOR THE COURTS.

Although the U.S. Supreme Court has acknowledged and enforced a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital v. Mercury Contr. Corp.*, 460 U.S. 1, 24-25 (1983), the Court has made consistent exceptions to this policy for questions of arbitrability. The Supreme Court held in 1986 that whether the parties had submitted a particular dispute to arbitration, or the "question of arbitrability," was "an issue for judicial determination," finding that whether a contract dispute was subject to an arbitration clause was a question for the courts. *AT&T Tech.*, 475 U.S. at 652. Once a court has determined that a dispute should be resolved by an arbitrator, then the arbitrator will evaluate the parties' substantive claims; but "[i]t was for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration." *Id.* at 651.

The Supreme Court further solidified its position regarding arbitrability in 1995 when it held that because a party "did not clearly agree to submit the question of arbitrability to

arbitration, the Court of Appeals was correct in finding that the arbitrability of the . . . dispute was subject to independent review by the courts." *First Options of Chicago v. Kaplan*, 514 U.S. 938, 947 (1995). This opinion clearly distinguishes between the question of *who* should decide arbitrability from the question of *whether* a specific dispute falls within the scope of a valid arbitration agreement, holding that the former inquiry is properly submitted to the courts. *See id.* at 944-45. Where parties have not clearly agreed to submit a dispute to arbitration, courts should be hesitant to give arbitrators the power to force a party to arbitrate a matter they would rather a judge decide.[2] *Id.*

More recently, the Supreme Court has further described questions of arbitrability as "gateway dispute[s] about whether the parties are bound by a given arbitration clause," which are "for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court."). The Eleventh Circuit has agreed, stating that "[t]his rule makes imminent sense." *Terminix Interim Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005). Accordingly, here, there can be no question that this Court has the obligation to decide the issue of arbitrability.

Courts regularly grant preliminary injunctive relief while they determine whether a dispute is arbitrable under the parties' agreement to arbitrate. Indeed, the Third Circuit has held that if a party has a right to a court's determination of arbitrability, and the court prematurely compels arbitration of a non-arbitrable issue, the harm to the plaintiff would be "*per se*

---

[2] As evidenced by their Motion to Dismiss, Defendants fail to recognize the important distinction between *who* decides if a valid arbitration agreement exists and *whether* a dispute is arbitrable when a valid arbitration agreement exists. The Supreme Court has clearly established that courts are to undertake the initial inquiry of whether a valid arbitration agreement exists. Thereafter, FINRA Rule 12203(a) may apply to the latter inquiry, providing that the FINRA Director may decide if a dispute is arbitrable in certain cases where a valid arbitration agreement exists. Defendants incorrectly apply Rule 12203 to both situations when, in fact, this permissive rule only applies to the latter.

irreparable." *PaineWebber, Inc. v. Hartmann*, 921 F.2d 517, 515 (3d Cir. 1990). Moreover, in granting motions for injunctive relief, other courts have determined that "granting a preliminary injunction does not disserve the public interest because the public has no interest in compelling arbitration of claims which the parties agreed are not subject to arbitration." *See Dean Witter Reynolds, Inc. v. Goyette*, 25 F. Supp. 2d 1344, 1346 (M.D. Fla. 1996) (citing *AT&T Tech.*, 475 U.S. at 643); *see also Dean Witter Reynolds, Inc. v. Pollack*, No. 96-6397, 1996 WL 1044969, *1, *4 (S.D. Fla. 1996).

Here, it is clear that this Court must decide whether this dispute is arbitrable. Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have irrefutably placed this decision in the hands of the courts. Moreover, preliminary and permanent injunctive relief in favor of the Plaintiffs is necessary and appropriate in order to prevent the irreparable harm of submitting non-arbitrable claims to arbitration.

## II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE THIS DISPUTE IS NOT ARBITRABLE.

Plaintiffs are likely to succeed on the merits of their Complaint for injunctive relief because there is no agreement – express, implied or otherwise – between the Plaintiffs and Defendants to submit any dispute between them to FINRA arbitration. Because of the Supreme Court's clear directive that parties must not be required to arbitrate disputes absent their clear agreement to do so, Defendants' claims against the Plaintiffs in the arbitration proceeding are due to be dismissed. *See Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 83 (2002).

As previously stated, there is no written or oral agreement to arbitrate between the Plaintiffs and Defendants. In the absence of a written agreement to arbitrate, the FINRA Code of Arbitration Procedure (formerly the NASD Code of Arbitration Procedure) serves as an agreement to arbitrate certain disputes between a FINRA member firm and its customers. *See*

*MONY Securities Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004). Plaintiffs do not dispute that as FINRA members, they are bound by the provisions of the FINRA Code of Arbitration Procedure when applicable. *See MONY Securities Corp.*, 390 F.3d at 1342. Those provisions, however, are not applicable to this set of disputes.

Pursuant to Rule 12200 of the FINRA Code of Arbitration Procedure, member firms must arbitrate a dispute where it arises "between a customer and a member or associated person of a member; and the dispute arises in connection with the business activities of the member or the associated person." FINRA Code of Arbitration Procedure, Rule 12200. In examining whether this provision requires the arbitration of a specific dispute, the Eleventh Circuit has held that Rule 12200 sets forth a two part test that must be applied by the courts: the Defendants must show that (1) the claim involves a dispute between a customer and a member or associated person of a member, and (2) that the dispute arises in connection with the business activities of the member or the associated person. *See Wheat, First Securities Inc. v. Green,* 993 F.2d 814, 820 (11th Cir. 1993); *MONY Securities Corp.*, 390 F.3d at 1343 (*quoting Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004)).

Here, Defendants' Statement of Claim involves a dispute about annuities issued by AXA Equitable and sold to the Defendants by associated persons of Raymond James. The Defendants were not customers of the Plaintiffs, and this dispute does not arise in connection with the Plaintiffs' business activities. Simply put, the Defendants will be unable to satisfy their burden of proving either element of the two part test, and their claims are therefore ineligible for arbitration.

**A.    Defendants Are Not and Have Never Been Customers of the Plaintiffs.**

Defendants will be unable to satisfy their initial burden of proving that they were customers of AXA Advisors or AXA Distributors.  Defendants have never engaged in a business relationship or business transaction with either of the Plaintiffs.  Affidavit of William C. Miller.  Because there is no customer relationship whatsoever between the Defendants and the Plaintiffs, there is no basis for the arbitration of the current dispute between the parties.

In *Wheat First*, the Eleventh Circuit was first presented with the issue of whether investors were customers of a member firm pursuant to FINRA rules.  *Wheat, First Securities Inc. v. Green,* 993 F.2d 814 (11th Cir. 1993).  The investors in *Wheat First* held securities trading accounts with Marshall & Co. Securities, Inc ("Marshall & Co.").  *Wheat, First*, 993 F.2d at 815.  The investors' claims related to fraudulent misrepresentations made by an agent with Marshall & Co. in connection with their purchase of certain securities.  *Id.* at 815-16.  Subsequent to the investors' purchases of the investments at issue, Wheat First merged with Marshall & Co., and both the agent and the investors' accounts thereafter transferred to Wheat First.  *Id.* at 816.  The investors later initiated an NASD arbitration against Wheat First arguing, *inter alia*, that Wheat First was required to arbitrate because the investors fit within the meaning of the term "customer" under FINRA rules.

Like the case presently before this Court, in *Wheat First* the investors and the member firm "had absolutely no relationship at the time of the alleged events that [the investors sought] to arbitrate."  *Id.* at 818.  In rejecting the investors' claims that the court should determine their customer status under FINRA rules as of the time that the arbitration was filed, the court held as follows:

> We believe that the rule preferred by Appellants would do
> significant injustice to the reasonable expectations of NASD

members. We cannot imagine that any NASD member would have contemplated that its NASD membership alone would require it to arbitrate claims which arose while a claimant was a customer of another member merely because the claimant subsequently became its customer. The potential for abuse under this scheme is manifestly apparent from the facts of the present case. We therefore hold that customer status for the purposes of the 'customer' requirement of NASD Code §§ 1 and 12(a) must be determined as of the time of the events providing the basis for the allegations of fraud. The Appellants were not customers of Wheat First at the time of the allegedly fraudulent Central stock transactions. Thus, they cannot invoke the NASD Code to compel Wheat First to arbitrate.

*Id.* at 820.

In the instant case, the Plaintiffs' claim for injunctive relief is even stronger than the claim in *Wheat First*. Similar to *Wheat First*, the Defendants here were not customers of AXA Advisors or AXA Distributors at the time of the transactions at issue; unlike *Wheat First*, the Defendants herein <u>never</u> became customers of the Plaintiffs at any time. The Defendants here have "had absolutely no relationship" whatsoever with the Plaintiffs. *See* id. at 818. While the Statement of Claim alleges that Defendants purchased variable annuity investments from the Plaintiffs in reliance on representations made by the Plaintiffs, neither of the Plaintiffs sold any of the annuities at issue to the Defendants. Affidavit of Sidney Smith at ¶¶4-5; Affidavit of William C. Miller at ¶¶4-5. Each of the Defendants purchased the variable annuity contracts at issue through Maxine Chappell and Ann Holman, registered representatives with Raymond James Financial Services, Inc. Affidavit of Sidney Smith at ¶5. Neither Maxine Chappell nor Ann Holman has ever been an associated person, agent, employee or representative of the Plaintiffs. Affidavit of William C. Miller at ¶7. In addition, neither Maxine Chappell nor Ann Holman has ever been appointed with the Plaintiffs. *Id.* Instead, both Maxine Chappell and Ann Holman were appointed with AXA Equitable as agents for the purpose of selling AXA

Equitable products. Affidavit of Sidney Smith at ¶5.

Moreover, each of the Defendants' variable annuity contracts were issued by AXA Equitable – not AXA Advisors or AXA Distributors. Affidavit of Sidney Smith at ¶4; Affidavit of William C. Miller at ¶3. In addition, AXA Equitable (not AXA Distributors or AXA Advisors) published the prospectus received by the Defendants when they purchased their variable annuities. Affidavit of Sidney Smith at ¶6. Accordingly, there is no relationship whatsoever between the Defendants and AXA Distributors or AXA Advisors, and like the investors in *Wheat First*, the Defendants here are not customers of the Plaintiffs. *See Wheat, First*, 993 F.2d at 815.

While the Eleventh Circuit has more recently addressed the issue of whether investors were customers of a member firm pursuant to FINRA rules, each of those cases, which address the issue in the selling away context, are readily distinguishable from the present case. *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004); *MONY Securities Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004). In both *MONY Securities* and *King*, the member firms contended that the investors were not their customers, despite the fact that the investors were customers of the member firms' associated persons. *See MONY Securities Corp.*, 390 F.3d at 1342; *King*, 386 F.3d at 1366. In each of those cases, the critical factor in the court's inquiry was the undisputed evidence that the investors purchased investments from an associated person of the member firm. *See MONY Securities Corp.*, 390 F.3d at 1344 ("We thus hold that the Bornsteins are customers under the applicable NASD rules because it is undisputed that they are customers of Keller, and that Keller was an associated person with MONY."); *King*, 386 F.3d at 1370 ("The parties agree that King dealt with [IFG's associated person], so King, in turn, dealt with IFG. The Court, therefore, holds that King has satisfied the first requirement of [NASD]

Rules 10101(c) and 10301(a) by demonstrating that she is a customer and IFG is a member."). Thus, because each of those involved undisputed evidence that the investors purchased securities from the member firm's associated persons, the court found that that the investors were customers of the member firms pursuant to NASD rules.  *See Id.*

*MONY Securities* and *King* are therefore readily distinguishable on the basis that here, there can be no dispute that the Defendants did not purchase securities from and had no relationship with an associated person of either AXA Distributors or AXA Advisors.  *See Id.* The Defendants' Statement of Claim is devoid of any factual allegation whatsoever which connects them in any way to an associated person of the Plaintiffs, much less to the Plaintiffs themselves.  Each of the Plaintiffs purchased the annuity contracts at issue through associated persons of Raymond James – not AXA Advisors or AXA Distributors.  Affidavit of Sidney Smith at ¶5.  Thus, the Eleventh Circuit's determination of whether the investors in *MONY Securities* and *King* were customers of the member firms is inapplicable here.

Other courts that have dealt with the customer issue presented here have held that there must be some connection between the investors and the member firm or their associated person in order to support a finding that a customer relationship exists.  Those "courts recognize that the definition of 'customer' must not be so broad that it would upset the reasonable expectations of the NASD members, as parties to the 'contract' created by the NASD rules.  Instead, they look at the nature of the relationship between the investor and the NASD member or its associated person."  *Contemporary Financial Solutions, Inc. v. Miller*, No. 07-cv-00793 MSK, 2007 WL 4197588, Slip. op. at *4 (D. Colo. Nov. 20, 2007) (noting that cases such as *Wheat, First Securities Inc. v. Green,* 993 F.2d 814 (11th Cir. 1993) "are instructive as to how the investor's relationship with the NASD member or associate should be scrutinized, because they show what

an NASD member's reasonable expectations are as to what claims should be submitted to arbitration."); *see Herbert J. Sims & Co., Inc. v. Roven*, 548 F.Supp.2d 759 (N.D. Cal. 2008) (the definition of "customer" should not "upset the reasonable expectations of FINRA members"). Specifically, the Eighth Circuit requires a finding of "some brokerage or investment relationship between the parties." *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772-73 (8th Cir. 2001).

Employing the analysis adopted by the Eighth Circuit demonstrates that no basis exists for a finding that the Defendants in this case were customers of the Plaintiffs. There is no evidence whatsoever of any brokerage relationship between the parties. Affidavit of William C. Miller. None of the Defendants purchased investments from the Plaintiffs or entered into a contract with the Plaintiffs. Affidavit of William C. Miller at ¶¶5-6. Nor have the Plaintiffs ever maintained accounts or possessed cash or securities of the Defendants. Affidavit of William C. Miller at ¶6. Moreover, the Plaintiffs have never provided the Defendants with account statements, confirmations or written correspondence regarding the annuities at issue in this proceeding. Affidavit of William C. Miller at ¶6. Rather, AXA Equitable, which will not be a part of the subject arbitration, issued the variable annuity contracts to the Defendants and provided the Defendants with account statements and confirmations regarding their annuities. Affidavit of Sidney Smith.

Because the Defendants "had absolutely no relationship" with the Plaintiffs, the arbitration of this dispute "would do significant injustice to the reasonable expectations" of the Defendants as FINRA members. *See Wheat, First*, 993 F.2d at 818. Indeed, "the potential for abuse" warned of by *Wheat First* "is manifestly apparent from the facts of the present case," as the arbitration of this dispute would lay a foundation for the arbitration of any dispute filed by

any investor against any member firm, regardless of whether the investor ever dealt with that member firm in any capacity. Such injustice is not required by the FINRA Code of Arbitration Procedure. *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 773 (8th Cir. 2001) (holding that member firm, solely by virtue of its membership in the NASD, did not agree to arbitrate a dispute that did not involve investment or brokerage services).

In sum, because the Defendants "had absolutely no relationship" with the Plaintiffs, the Defendants were never customers of AXA Advisors or AXA Distributors, their agents or representatives. *See Wheat, First*, 993 F.2d at 818. Defendants are therefore unable to satisfy their burden of proof as to the first prong of the Eleventh Circuit's test. *See id*. at 820. Accordingly, there is no agreement to arbitrate between the Plaintiffs and Defendants, and the Defendants' claims are ineligible for arbitration.

### B.    This Dispute Does Not Arise in Connection With the Business Activities of AXA Advisors or AXA Distributors.

Defendants are also unable to satisfy the second part of the test that the Eleventh Circuit has adopted in determining whether a member firm is obligated to arbitrate a dispute filed by another party. Under part two of the test, Defendants must prove that this dispute arises in connection with the business activities of AXA Advisors and AXA Distributors, or their associated persons. *See Wheat, First Securities Inc. v. Green,* 993 F.2d 814, 820 (11th Cir. 1993); *MONY Securities Corp.*, 390 F.3d at 1343 (*quoting Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004). Independent of the fact that the Defendants were not customers of the Plaintiffs, Defendants will be unable to prove that this case arises in connection with the Plaintiffs' business activities, and therefore this dispute is not arbitrable.

Only a limited number of disputes arise in connection with a member firm's business.

"[I]n the universe of member-customer disputes, only a portion will arise in connection with the member's business and only those satisfy the Code's arbitration provisions." *King*, 386 F.3d at 1370. "The NASD code does not mandate arbitration for "any claim against a member," as the defendants would have us interpret it; it mandates arbitration of any claim 'arising in connection with the business' of a member or 'in connection with the activities' of an associated person." *A.G. Edwards & Sons, Inc. v. Clark*, 558 So. 2d. 358, 363 (Ala. 1990) (emphasis added).

This is not one of the limited cases in which the dispute arises in connection with the member's business. Rather, this case arises in connection with the Defendants' purchase of variable annuities issued by AXA Equitable and sold by Raymond James representatives. Affidavit of Sidney Smith at ¶¶4-5. Neither AXA Advisors nor AXA Distributors sold the annuities at issue to the Defendants. *Id.*; Affidavit of William C. Miller. Nor did they issue Defendants' annuities. *See* Affidavit of William C. Miller at ¶3; Affidavit of Sidney Smith at ¶4.

While AXA Advisors is a brokerage firm which engages in retail sales of AXA Equitable annuities, it did not engage in the sale of any of the annuities at issue. Defendants will be unable to show any connection whatsoever between their annuity purchases and the business activities of AXA Advisors. In light of that fact, for this Court to hold that Defendants' annuity purchases arose out of AXA Advisors' business would be to hold that Defendants' annuity purchases necessarily arose in the connection with the business of every brokerage firm in the United States. Clearly, such an absurd result would "upset the reasonable expectations" of FINRA member firms. *See Contemporary Financial Solutions, Inc. v. Miller*, No. 07-cv-00793 MSK, 2007 WL 4197588, Slip op. at *4 (D. Colo. Nov. 20, 2007); *Wheat, First Securities Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993).

Similarly, while AXA Distributors markets AXA Equitable annuities at a wholesale

level, it does not sell AXA Equitable annuities to retail clients.    Affidavit of William C. Miller at ¶3.  As is the case with AXA Advisors, Defendants will also be unable to show that the sale of the annuity contracts at issue arises from the business activities of AXA Distributors.

The majority of courts, such as *MONY Securities* and *King*, which hold that investors' claims arise in connection with the business activities of a member firm, predicate such a finding on the basis that a member firm has a duty to supervise its associated persons, and its failure to supervise those persons arises in connection with its business activities.  *See MONY Securities Corp.*, 390 F.3d at 1344-45; *Multi-Financial Securities Corp.*, 386 F.3d at 1370.  As previously stated, these cases, however, are readily distinguishable because the associated persons who sold the annuities at issue in this case were <u>not</u> associated persons of the Plaintiffs.  *See* Affidavit of William C. Miller at ¶7.  Because Ann Holman and Maxine Chappell were associated persons of Raymond James, and were not employees, agents, representatives, appointed with, or associated persons of AXA Advisors or AXA Distributors, neither AXA Advisors nor AXA Distributors had any duty to supervise Ann Holman or Maxine Chappell.  Rather, Raymond James was the entity responsible for training and supervising Ann Holman and Maxine Chappell.  As such, Defendants are unable to satisfy the second prong of the Eleventh Circuit's test, providing a second and independent ground for a finding that this dispute is not arbitrable.  *See Wheat, First*, 993 F.2d at 818.

Because Defendants are unable to satisfy either of the requirements of Rule 12200 of the FINRA Code of Arbitration Procedure, there is no agreement to arbitrate between the parties to this dispute, and Plaintiffs have a substantial likelihood of prevailing on the merits of their claim for injunctive relief.

## II.    THE REMAINING REQUIREMENTS FOR ISSUANCE OF A PRELIMINARY INJUNCTION ARE SATISFIED.

The additional three factors courts consider in evaluating whether to issue preliminary injunctions are also satisfied here:  (1) Plaintiffs will suffer irreparable injury if relief is denied; (2) the threatened injury to the Plaintiffs clearly outweighs any damage that the preliminary injunction might cause to the Defendants; and (3) the public interest will be served by the injunction.  *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002).

First, Plaintiffs' forced participation in the arbitration of a dispute that they have not agreed to arbitrate will cause Plaintiffs irreparable harm.  *See Chase Manhattan Bank USA, N.A. v. Nat'l Arbitration Council, Inc.*, No. 3:04-CV-1205-T-32HTS, 2005 WL1270504, *3 (M.D. Fla. May 27, 2005) ("[B]eing compelled to arbitrate a claim in the absence of an agreement to arbitrate that claim constitutes an irreparable injury."); *see also Herbert J. Sims & Co., Inc. v. Roven*, 548 F.Supp.2d 759 (N.D. Cal. 2008).  Indeed, "compelling a party to arbitrate absent a valid agreement by the parties (*i.e.*, legal duty) to arbitrate is per se irreparable harm."  *Equity Securities Trading Co. v. Gillan*, No. 97-211-CIV-FTM-17D, 1997 WL 391794, *4 (M.D. Fla. June 23, 1997). Plaintiffs have the right to have their defenses determined in a court of law.

Preliminary injunctive relief is necessary to prevent the Defendants from forcing Plaintiffs to defend Defendants' claims in arbitration.   Plaintiffs' Answer in the arbitration proceeding is due to be filed on August 16, 2008.  Once Plaintiffs' Answer is filed, FINRA will immediately initiate the arbitrator selection process and an initial pre-hearing conference will be scheduled shortly after the arbitrators are ranked and selected by the parties.  In addition, Plaintiffs will be forced to comply with other FINRA procedures governing disclosures and scheduling related to 45 claimants.  A preliminary injunction is necessary to protect Plaintiffs

from the irreparable harm of expending resources and effort in participating in the arbitration dispute pending this Court's decision on the merits of Plaintiffs' claims for permanent injunctive relief. *See Chase Manhattan Bank USA, N.A. v. Nat'l Arbitration Council, Inc.*, No. 3:04-CV-1205-T-32HTS, 2005 WL1270504, *3 (M.D. Fla. May 27, 2005).

FINRA's arbitration procedures do not protect the Plaintiffs from the irreparable harm resulting from the expenditure of unnecessary resources attendant to the arbitration proceeding. FINRA arbitration rules provide very limited grounds for pre-hearing motions to dismiss, and in the instances where such motions are allowed, they are often heard by panels during the final arbitration hearing, which occurs in many cases after over a year of costly litigation. In addition, FINRA arbitrators are not required to provide reasons for their decisions and appeals are only granted in extreme circumstances. Thus, Plaintiffs have very limited grounds, if any, to seek relief from the arbitration panel, and have even more limited grounds for an appeal of the panel's decision.

Second, the balance of hardships clearly tips in favor of granting the injunction. Defendants' claims accrued several years ago. The variable annuity policies identified to be at issue in Defendants' Statement of Claim were purchased between November 1998 and November 2001. Affidavit of Sidney Smith at ¶5. Thus, requiring the Defendants to await this court's determination of arbitrability should be of no consequence to the Defendants, who have waited, in some cases, over nine years to file their Statement of Claim. *See id*.[3] Plaintiffs, on the other hand, have filed this action promptly to seek the relief to which they are entitled. Further, Defendants can show no ultimate prejudice by having their claims resolved in a court of

---

[3] Moreover, because Defendants purchased the contracts at issue between November 1998 and November 2001, pursuant to FINRA Rule 12206, Defendants' claims are not even eligible for arbitration. *See* FINRA Code of Arbitration Rule 12206 ("No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim.").

law. Thus, the harm suffered by Plaintiffs in the absence of a preliminary injunction clearly outweighs the harm the Defendants will suffer if enjoined from arbitrating a non-arbitrable dispute. *See Chase Manhattan Bank*, 2005 WL 1270504 at *4; *see also Prudential Secs., Inc. v. Kucinski*, 947 F. Supp. 462, 467 (M.D. Fla. 1996) (holding that the harm to plaintiffs of having to undergo the expense of arbitrating met Fed. R. Civ. P. 65 requirements of the balance of the hardships, warranting a preliminary injunction of the arbitration).

Third, there will be no disservice to the public if a preliminary injunction is issued. Rather, Plaintiffs and Defendants will conserve resources and effort that would otherwise be expended by participating in an impermissible arbitration proceeding. *See Chase Manhattan Bank*, 2005 WL 1270504 at *4; *Dean Witter Reynolds, Inc. v. Goyette*, 25 F. Supp. 2d 1344, 1346-47 (M.D. Fla. 1996) ("Granting a preliminary injunction does not disserve the public interest because the public has no interest in compelling arbitration of claims which the parties agreed are not subject to arbitration."); *Nordin v. Nutri/System, Inc*., 897 F.2d 339, 345-46 (8th Cir. 1990) (affirming district court's injunction against arbitration of dispute arising from contract that did not contain arbitration clause because of "public interest in favor of enforcement of arbitration only where the parties have so agreed.").

## CONCLUSION

The entry of a preliminary injunction in this case is unquestionably necessary and appropriate. Plaintiffs have demonstrated that there is a substantial likelihood of success on the merits of their claims because there is no written or oral agreement between the parties to arbitrate this dispute. In addition, FINRA Code of Arbitration Procedure does not require the arbitration of this dispute because the Defendants were not customers of the Plaintiffs or their associated persons, nor does Defendants' arbitration proceeding arise in connection with

Plaintiffs' business activities.  As such, this dispute is not arbitrable.

Plaintiffs have further demonstrated that they will suffer irreparable injury if relief is denied, and the threatened injury to the Plaintiffs clearly outweighs any damage that the preliminary injunction might cause to the Defendants.  Finally, there will be no disservice to the public if a preliminary injunction is issued in this case.  Plaintiffs therefore respectfully request that this Court enter a preliminary injunction restraining and enjoining Defendants, their agents, attorneys, and all persons acting in concert or participation with them, or similarly situated with them, from proceeding with their claims pending against the Plaintiffs in the arbitration styled *Gayle S. Bullard, et al., v. AXA Equitable Life Insurance Company, et al.*, FINRA Arbitration No. 08-00280.

Respectfully submitted,


/s/ Andrea Morgan Greene
A. Inge Selden III (SEL003)
John N. Bolus (BOL022)
Andrea Morgan Greene (GRE102)

Attorneys for Plaintiffs
AXA Distributors, LLC and AXA Advisors, LLC


OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2602
(205) 254-1000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Andrew P. Campbell
Caroline Smith Gidiere
Campbell, Gidiere, Lee, Sinclair & Williams, PC
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209

on this the 27th day of June, 2008.

/s/ Andrea Morgan Greene
OF COUNSEL

EXHIBIT A

# FINRA
## IN THE MATTER OF ARBITRATION BETWEEN

GAYLE S. BULLARD,
PEGGY J. COLE,
BEVERLY L. DAVIS,
JESSE D. DEAN,
JACQUELINE P. DRAUGHON,
HANS D. ERBSKORN, CHARLENE
B. ERBSKORN,
HELEN S. HALL WALWORTH,
RABON W. HARRISON,
RUTH K. HARRISON,
JAMES H. HAUSMAN,
DONALD W. HENDLEY,
EDWARD L. HINSON,
JEANETTE C. HINSON, ANN S. HOLMAN,
GAYLE O. HUDSON,
KENNETH W. JOYNER, JAMES R. LITTLE,
LINDA D. LITTLE, SARAH A. MARTIN,
SARAH MCCORD, JERRY
MIMS, NINA SUE NEW,
HAZEL J. ODOM,
MARY HARRIETT PATTON, JACK
R. PERRY, FREDDY QUATTLEBAUM,
CAROLYN H. SAUNDERS,
ROY W. SAUNDERS, EARL T. SENN,
EDNA SENN, REUBEN S. SHELLEY,
JUNE K. SHELLEY,
ANITA CAROL SHIRAH,
DANNY L. SNELL, FLOYD
STARLING, VIRGINIA STARLING, WILLA
C. STOREY, JEANETTE S. SUTHERLAND,
MARY E. TODD, BETTY M. VANN,
F. TERRY WALDEN,
SHIRLEY J. WALKER,
DEBRA REBECCA WHITE,

Arbitration Number:

08-00280

Page 1 of 13

PHEOBIE D. WILSON,
CHARLES H. WOODHAM,

Claimants,

v.

AXA EQUITABLE LIFE INSURANCE COMPANY,
f/k/a THE EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES, AXA
DISTRIBUTORS, LLC, f/k/a
EQUITABLE DISTRIBUTORS, LLC, and AXA
ADVISORS, LLC, f/k/a EQ FINANCIAL
CONSULTANTS, INC.,

Respondents.

## STATEMENT OF CLAIM

### Parties:

Claimants, Gayle S. Bullard (Policy #98683798), Peggy J. Cole (Policy #301675095), Beverly L. Davis (Policy #301675122), Jesse D. Dean (Policy #300625293), Hans D. Erbskorn (Policy #301675082 and Joint Policy #301675094), Charlene B. Erbskorn (Policy #301675087 and Joint Policy #301675094), Rabon W. Harrison (Policy #300611148, Policy #300611152, Joint Policy #301675243, and Joint Policy #300611544), Ruth K. Harrison (Policy #301675032, Policy #300611147, Joint Policy #301675243, and Joint Policy #300611544), Ann S. Holman (Policy #98676386), Kenneth W. Joyner (Policy #301675294), Sarah A. Martin (Policy #99632664), Sarah McCord (Policy

#302675034), Nina Sue New (Policy #99633083), Mary Harriett Patton (Policy #300639746), Freddy Quattlebaum (Policy #300613076), Anita Carol Shirah (Policy #99645053), Willa C. Storey (Policy #300605531), Jeanette S. Sutherland (Joint Policy #98676810), Helen S. Hall Walworth (Joint Policy #98676810), Mary E. Todd (Policy #301675338), Betty M. Vann (Policy #300689024), Pheobie D. Wilson (Policy #99621080), Debra Rebecca White (Policy #301675107), and Charles H. Woodham (Policy #300605999), are individuals over the age of nineteen (19) who reside in Houston County, Alabama.

Claimants, Floyd Starling (Policy #300607598 and Joint Policy #300607965), Virginia Starling (Policy #300610853 and Joint Policy #300607965), Jerry Mims (Policy #99625015), F. Terry Walden (Policy #300616978), June K. Shelley (Policy #300602997), Reuben S. Shelley (Policy #300602995 and Policy #98687385), Shirley J. Walker (Policy #300619943), Donald W. Hendley (Policy #99630183), Edward L. Hinson (Policy #300604193), and Jeanette C. Hinson (Policy #300604195) are individuals over the age of nineteen (19) who reside in Henry County, Alabama. Carolyn H. Saunders (Joint Policy #300628733) and Roy W. Saunders (Joint Policy #300628733, Policy #300628734) are individuals over the age of nineteen (19) who reside in Geneva County, Alabama.

James H. Hausman (Policy #97654785), James R. Little (Policy #300636724 and Joint Policy #300636678), Linda D. Little (Policy #300636722 and Joint Policy #300636678), Earl T. Senn (Policy #300607502), and Edna Senn (Policy #300607501 and Policy #300607503), are individuals over the age of nineteen (19) who reside in Dale County, Alabama.

Jack R. Perry (Policy #300622548 and Policy #98682661) and Hazel J. Odom (Joint Policy #99619998) are individuals over the age of nineteen (19) who reside in Geneva County, Alabama. Danny L. Snell (Policy #300616278) and Jacqueline P. Draughon (Policy #99630016) are individuals over the age of nineteen (19) who reside in Jackson County, Florida. Gayle O. Hudson (Policy #300628990) is an individual over the age of nineteen (19) who resides in Polk County, Florida.

AXA Equitable Life Insurance Company f/k/a Equitable Life Assurance Society of the United States (hereinafter "Equitable Life") is a stock life insurance company that is among the largest life insurance companies in the United States, and is a wholly-owned subsidiary of The Equitable Companies Incorporated.

AXA Distributors, LLC f/k/a Equitable Distributors, LLC, (hereinafter "EDL") AND AXA Advisors, LLC f/k/a EQ Financial Consultants, Inc.

(hereinafter "EQF") are wholly owned subsidiaries of Equitable Life and have responsibility for sales and marketing functions for the Certificates issued by Equitable Life. EDL and EQF are also the distributors for Equitable Life annuity products, such as the Accumulator[sm], with its baseBUILDER® and Income Manager® options. EDL and EQF are broker-dealers registered with the Securities and Exchange Commission and each is a member of the Financial Industry Regulatory Authority (FINRA).

Joinder in this arbitration is appropriate because all Claimants' claims arise out of or relate to two series of transactions and occurrences with regard to all Respondents. The claims also present common questions of law and/or fact.

## Facts

From 1998 to 2000, agents of Respondents made representations to the Claimants that they could purchase a seven or ten year investment from Respondents which had a guaranteed rate of interest of either 5% or 6%, if held to maturity, but that the return could be greater if the stock market out-performed this minimum guaranteed rate. Respondents represented to Claimants that the 5% or 6% (as the case may be) interest rate would be compounded annually if held to maturity. Respondents represented that the Claimants would receive "the best of both worlds," because they were guaranteed a 5% or 6% return even if the stock

market were to decline. Thus, they represented, the investment could not lose value.

All of the Claimants made clear to the Respondents that, while the minimum guaranteed rate of return was attractive, they needed access to their monies after maturity and were, therefore, not interested in the annuity aspect of the investment. Respondents represented to Claimants that there was 90% liquidity on the investment if held to maturity, and reassured Claimants that they could take a 90% lump sum payment out of their investment, without penalty, at the conclusion of the seven or ten year maturity period.

Respondents suppressed and concealed from Claimants that they would not guarantee the Claimants the 5% or 6% interest rate associated with this variable annuity product. Unbeknownst to Claimants the investment involved risk, including possible loss of principal. Respondents also concealed from the Claimants that they could not have complete access to their investment after the seven or ten year liquidity period.

Respondents did not provide the Claimants with a prospectus providing complete, meaningful disclosures of the investment, including its options, risks, fees, expenses, and method of assuring a 90% lump sum pay out without penalty at the close of the maturity period. Relying upon the representations of Respondents,

all of the Claimants transferred money to the variable annuity products, including, for some Claimants, money from IRAs.

After investing their monies with Respondents, Claimants periodically received statements regarding their investments.   On numerous occasions, Claimants questioned one or more of the Respondents regarding their accounts. On each such occasion, Respondents reassured the Claimants that the amounts shown on the statements did not accurately reflect the value of their investments.

Less than two years ago, the Claimants discovered that, contrary to the representations and continued assurances of the Respondents, they were in fact not guaranteed a 5% or 6% (as the case may be) return on their investments, and that they would not have 90% access to their investments after seven or ten years, or at maturity, without penalty.   They further discovered that they were required to annuitize their entire investment and thus could only receive a portion of their investments.

## Claims

### Fraud

Respondents, through their agents, servants, and employees, are liable for making misrepresentations of material fact to Claimants, including that Claimants were guaranteed a return on their investment after either seven or ten years of

either 5% or a 6% (the guaranteed minimum interest rate); that after seven or ten years (the applicability period to maturity), that Claimants would have access to 90% of their investment plus guaranteed interest (at a minimum), and that Claimants could cash in their investment for a lump sum payment without penalty if they so desired. These representations were false, and Respondents either knew they were false, recklessly misrepresented the facts without true knowledge of the facts, or misrepresented the facts by mistake but with the intention that Claimants would rely upon them. Relying on those representations, Claimants invested monies with Respondents.

Through common misrepresentation, Respondents deceitfully tricked Claimants and others into purchasing annuities. Claimants were prevented from learning about their investments because Respondents deliberately and fraudulently withheld such information and deliberately and fraudulently responded falsely to Claimants' inquiries.

Because of the Respondents' fraud and misrepresentations, Claimants paid for an investment which was not what they bargained for and did not earn the promised applicable 5% or 6% interest on their investments. The Claimants are unable to cash out their investments after either the seven or ten year period for maturity without penalty. Their investments have not performed as represented by

Respondents, and the Claimants have lost the opportunity to make alternative investments with their funds. Claimants acted as a direct result of the non-disclosure/suppression, misrepresentation of material fact, and/or fraudulent concealment and purchased the investment product of the Respondents.

### Suppression

The Respondents are fiduciaries of Claimants and are liable for fraudulently suppressing and failing to disclose to the Claimants that they could lose money on their investment, that they were not guaranteed the applicable rate of return, either 5% or 6%, and that they would not have access to 90% of their investments without penalty after seven or ten years, or the applicable rate of interest. The Respondents are further liable for failing to provide the Claimants with a prospectus with meaningful disclosure regarding all aspects of their investments either before or at the time of sale.

### Negligent Training and Supervision

Agents, servants, and/or employees of the Respondents negligently, wantonly, and/or willfully failed to adequately regulate, audit, supervise and/or monitor the activities of their agents and that Respondents negligently failed to detect and/or deter the misrepresentations of their agents. Further, Respondents

knew of should have known of the misrepresentations of their agents. Respondents impliedly authorized or ratified the conduct of their agents, and the acts of their agents were calculated to or did benefit Respondents. Respondents are thus liable for violations of both the Alabama common law and the NASD Rule of Fair Practice 3010.

### Breach of Contract

Under the terms of their contracts, the Claimants were supposed to receive an investment product with a guaranteed return of either 5% of 6% compounded annually after either seven or ten years, and have 90% access to a lump sum payout of their investment, including the 5% or 6% guaranteed return compounded annually, without penalty after seven or ten years. Respondents are liable for breaching their contracts with Claimants in that they did not provide Claimants with the product they bargained for.

### Conversion

Respondents are liable for wantonly, willfully, and/or maliciously converting monies from Claimants' accounts.

### Alabama Securities Fraud

Respondents are liable to Claimants for employing a device, scheme or artiface to defraud, making untrue statements of a material fact or omitting to state

a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, and/or engaging in an act, practice or course of business which operates as to fraud or deceit.    The Claimants were not aware of the false statements and/or omissions until less than two years ago and had no reason to know of them, and they could not, even in the exercise of reasonable care, have known about the false statements and/or omissions.

### Unsuitable Investment/Suitability Review

The Respondents failed to conduct a suitability review before selling any of the Claimants their variable annuities.  Because the Claimants needed to access their investments without penalty after the maturity period, the Respondents should not have allowed the sale of a variable annuity with a payout penalty at the end of the maturity period.  Further, the Respondents should not have sold the Claimants an investment that could lose value, when each of the Claimants required an investment that would not lose value.  Respondents are liable for selling Claimants unsuitable investments and for failing to conduct a suitability review under Rule 2310 of the NASD Rules of Fair Practice.

As a direct result of the above behavior, Claimants have been damaged. Claimants demand judgment against Respondents for compensatory and punitive

damages in excess of $1 million, as may be proven at arbitration, plus interest,

forum fees, attorney fees, witness and production fees, other case-related costs, and

such other relief as may be just and proper.


Respectfully submitted,


_____
One of the Attorneys for Claimants

OF COUNSEL:
Andrew P. Campbell (CAM006)
Caroline Smith Gidiere (SMI209)
CAMPBELL, GIDIERE, LEE
SINCLAIR & WILLAIMS, PC
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
(205) 803-0051 phone
(205) 803-0053 fax
acampbell@cgl-law.com
cgidiere@cgl-law.com

## PLEASE SERVE THE FOLLOWING RESPONDENTS
## BY CERTIFIED MAIL:

**AXA EQUITABLE LIFE INSURANCE COMPANY**
**f/k/a THE EQUITABLE LIFE ASSURANCE SOCIETY**
**OF THE UNITED STATES**
1290 Avenue of the Americas, 4th Floor
New York, NY 10104


**AXA DISTRIBUTORS, LLC, f/k/a**
**EQUITABLE DISTRIBUTORS, LLC**
1290 Avenue of the Americas, 7th Floor
New York, NY 10104

**AXA ADVISORS, LLC, f/k/a**
**EQ FINANCIAL CONSULTANTS, INC.**
1290 Avenue of the Americas, 12th Floor
New York, NY  10104

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| AXA DISTRIBUTORS, LLC and AXA ADVISORS, LLC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO.: |
| GAYLE S. BULLARD, et al., | ) ) | |
| Defendants. | ) ) | |

<u>AFFIDAVIT OF SIDNEY SMITH</u>

| | |
|---|---|
| STATE OF NEW YORK | ) ) |
| COUNTY OF NEW YORK | ) |

Comes now Sidney Smith, who, upon being duly sworn, does depose and say as follows:

1.    My name is Sidney Smith.  I am competent to make this affidavit, and I have personal knowledge of the facts stated below.

2.    I am currently employed by AXA Equitable Life Insurance Company, f/k/a The Equitable Life Assurance Society of the United States ("AXA Equitable") as Vice President of Annuity Marketing and Development, and have been employed by AXA Equitable in various capacities for over 30 years.  In my role as Vice President of Annuity Marketing and Development, I have access to and have reviewed business records disclosing the information herein.

3.    AXA Equitable is an issuer of variable annuities, among other products.

4.    AXA Equitable issued various variable and fixed deferred annuity contracts known as the Accumulator to Gayle S. Bullard, Peggy J. Cole, Beverly L. Davis, Jesse D. Dean, Jacqueline P. Draughon, Hans D. Erbskorn, Charlene B. Erbskorn, Rabon W. Harrison, Ruth K. Harrison, James H. Hausman, Donald W. Hendley, Edward L. Hinson, Jeanette C. Hinson, Gayle O. Hudson, Kenneth W. Joyner, James R. Little, Linda D. Little, Sarah A. Martin, Sarah McCord, Jerry Mims, Nina Sue New, Hazel J. Odom, Mary Harriett Patton, Jack R. Perry, Freddy Quattlebaum, Carolyn H. Saunders, Roy W. Saunders, Earl T. Senn, Edna Senn, Reuben S. Shelley, June K. Shelley, Anita Carol Shirah, Danny L. Snell, Floyd Starling, Virginia Starling, Willa C. Storey, Jeanette S. Sutherland, Mary E. Todd, Betty M. Vann, F. Terry Walden, Shirley J. Walker, Helen S. Hall Walworth, Debra Rebecca White, Pheobie D. Wilson and Charles H. Woodham (collectively, the "Claimants").

5.    Claimants purchased these annuities through Maxine Chappell and Ann Holman, former registered representatives with Raymond James Financial Services, Inc. Maxine Chappell and Ann Holman sold each of these contracts to the Claimants between November 1998 and November 2001. Both Maxine Chappell and Ann Holman were appointed with AXA Equitable as non-exclusive insurance agents for the purpose of selling AXA Equitable products.

6.    In connection with completing an application for the variable annuity contracts at issue, each of the Claimants represented that they received a variable annuity prospectus. AXA Equitable published the prospectus received by the Claimants in connection with their purchase of the variable annuities at issue in this proceeding.

7.    After purchasing the variable annuity contracts at issue, the Claimants received variable annuity account statements and confirmations from AXA Equitable.

8.    AXA Equitable is not a Financial Industry Regulatory Authority ("FINRA") member firm.  Although the Claimants named AXA Equitable in an arbitration proceeding which they intended FINRA to serve upon AXA Equitable, FINRA notified AXA Equitable that, as a non-member firm, it was not required to submit to such an arbitration proceeding.  In fact, AXA Equitable responded through counsel by declining to submit to FINRA's jurisdiction in that proceeding.  *See* letter from John N. Bolus to George H. Friedman dated March 10, 2008, attached as Exhibit 1.

FURTHER AFFIANT SAITH NOT.

Executed on this the 13th day of March, 2008.

_____
Sidney Smith

Sworn to before me this the 13th day of March 2008.

_____
Notary Public
My commission expires:

SUSAN J. STOVELAND
Notary Public - State of New York
No. 01ST6171954
Qualified in Dutchess County
My Commission Expires July 30, 2011

**EXHIBIT 1**



**MAYNARD COOPER**
██████████ **& GALE** PC
ATTORNEYS AT LAW

**John N. Bolus**
DIRECT: (205) 254-1025
EMAIL:  jbolus@maynardcooper.com

March 10, 2008

**Via Facsimile & UPS Overnight**

George H. Friedman, Esq.
Executive Vice President
FINRA Dispute Resolution
One Liberty Plaza
New York, NY 10006

Re:     *Gayle S. Bullard, et al. v. AXA Equitable Life Insurance Co., et al.*
         **FINRA Arbitration No.  08-00280**

Dear Mr. Friedman:

         I write on behalf of AXA Equitable Life Insurance Company ("AXA Equitable"), which has received a letter from FINRA enclosing a copy of the Statement of Claim filed in the above-referenced arbitration.   As FINRA's cover letter to AXA Equitable correctly notes, AXA Equitable has not entered into an agreement to arbitrate with any of the named Claimants.  See February 12, 2008 letter from Nene E. Ndem, attached as Exhibit A.   Moreover, AXA Equitable is not a FINRA member firm and does not voluntarily submit to arbitration with the Claimants. Therefore, FINRA does not have jurisdiction over the claims asserted against AXA Equitable, and AXA Equitable should be dismissed from the arbitration.

         Thank you for your attention to this matter.  Please do not hesitate to contact me should you have any questions.

                                        Very truly yours,

                                        John N. Bolus
                                        Attorney for AXA Equitable Life
                                        Insurance Company

cc:     Nene E. Ndem
         Andrew P. Campbell
         A. Inge Selden III

EXHIBIT A

**FINRA Dispute Resolution**

Southeast Region
Boca Center Tower 1 | 5200 Town Center Circle, Suite 200 | Boca Raton FL | 33486-1015 | 561 416 0277 | Fax 301 527 4868



Law Department

February 12, 2008                                                FEB 15 2008

Corporate Legal Department                              ~~~~~~~~ E Stassa
AXA Equitable Life Insurance Company
1290 Avenue of the Americas
New York, NY 10104

Subject:        FINRA Dispute Resolution Arbitration Number 08-00280
                Gayle S. Bullard, Peggy J. Cole, Beverly L. Davis, et al. vs AXA Equitable Life
                Insurance Company, et al.

Dear Department:

FINRA Dispute Resolution provides a forum for the resolution of disputes involving public investors and
broker-dealers, and members of the American Stock Exchange (AMEX), International Stock Exchange
(ISE), Philadelphia Stock Exchange (PHLX), NASDAQ, and Municipal Securities Rulemaking Board
(MSRB) registrants and/or their associated persons.

This office administers cases according to the procedures set forth in NASD Rules. The most up-to-date
version of the rules can be accessed or downloaded from our Web site at http://www.finra.org. On our
Web site you will also find FINRA Dispute Resolution Party's Reference Guide, which contains important
instructions concerning filing your answer or other claims. If you do not have access to the Internet, you
may call our office to request a copy of these documents.

### Filing a Statement of Answer

Since you have been named as a party in this arbitration, enclosed is a copy of the Statement of Claim.
**However, since you have not signed an agreement to arbitrate, your submission to arbitration must
be voluntary.** Please inform us in writing if you refuse to submit to arbitration.

If you decide to file a Statement of Answer:

1. Your Statement of Answer must specify all relevant facts and available defenses to the Statement of
Claim submitted (See NASD Rules[1]).

2. Your Answer may include any related claim(s) that you may have against Claimant or any other party
subject to arbitration under the rules. If you assert any of these claims you must submit the applicable fee.

---

[1]Customer Code Rule 12303
Industry Code Rule 13303
Old Code Rule 10314(b)

Please refer to the Schedule of Fees² for the related filing fee.

3. Pursuant to NASD Rules,³ you are required, no later than April 2, 2008, to send to the Claimant and all other parties, a signed Uniform Submission Agreement (form enclosed) and your Answer. Claimant or Claimant's counsel's address is provided at the end of this service letter.

4. NASD Rules also require that you send to the Director of Arbitration:
(a) **the original and three copies** of the Uniform Submission Agreement, properly     signed and dated by you;
(b) **the original and three copies** of your Answer; and
(c) **four copies** of any document(s) referred to in your Answer.

When sending copies of your Answer to the Director of Arbitration, please indicate that you have properly served your Answer on all parties. If you need an extension of time to file your Statement of Answer, you may contact Claimant directly and request one. If Claimant agrees to extend your time to file your Answer, please notify FINRA in writing of the new deadline for filing your Answer. You should also send a copy of that notice to Claimant and all other parties.

## Hearing Location

If an arbitration involves a public customer, FINRA Dispute Resolution will generally select a hearing location closest to the customer's residence at the time the dispute arose.⁴

In disputes between member firms, MSRB registrants and associated persons, FINRA Dispute Resolution will select the hearing location that is closest to the location where the associated person was employed at the time the dispute arose.

In industry disputes involving only member firms and/or MSRB Registrants unless the member firms are in the same locale or the parties agree to a specific hearing location, FINRA Dispute Resolution will consider the following factors when deciding the hearing location:

      1) Which party initiated the transaction at issue;
      2) The location of witnesses and documents; and
      3) The relative hardship of a party's travel to a location.

The **ANTICIPATED** hearing location of this case is: Birmingham, AL. This preliminary decision was

---

²Customer Code Rule 12900
Industry Code Rule 13900
Old Code Rule 10332

³Customer Code Rule 12303
Industry Code Rule 13303
Old Code Rule 10314(b)

⁴Customer Code Rule 12213
Industry Code Rule 13213
Old Code Rule 10315

made on behalf of the Director of Arbitration pursuant to NASD Rules.[5] A final decision regarding the hearing location will be rendered prior to the time the Panel is appointed. NASD Rules[6] authorize the presiding Panel to determine the time and date of all hearing(s).

If the anticipated initial hearing location listed above is **UNKNOWN**, FINRA Dispute Resolution is requesting recommendations from all parties for the hearing location based on the above applicable guidelines.

## Other Information

Please review NASD Rules and FINRA Dispute Resolution Party's Reference Guide booklet. Should you require additional information regarding FINRA Dispute Resolution arbitration, please contact us and refer to the case number assigned to this case, which is 08-00280. FINRA Dispute Resolution encourages the parties to communicate among themselves to resolve issues that do not require FINRA Dispute Resolution intervention.

Pursuant to Article V, Section 2(c) of the FINRA By-Laws, if you are a registered representative with the FINRA, you are required to keep your registration application current. Therefore, you are advised to review the Form U4 to determine if disclosure of this matter is required. If so, your failure to update your registration application may result in the filing of a formal complaint based on any omission. Any questions regarding this disclosure requirement should be directed to FINRA Member Services Phone Center (301) 590-6500.

## Discovery

In disputes involving customers please review the attached Discovery Guidelines.[7] In disputes involving only industy parties please review the applicable discovery code provisions for guidance.[8]

## Motions[9]

The time to respond to motions (other than motions to dismiss, as noted below) are governed by Customer and Industry Code Rules 12503(b) and 13503(b), respectively:

---

[5]Customer Code Rule 12213
Industry Code Rule 13213
Old Code Rule 10315

[6]Customer Code Rule 12600
Industry Code Rule 13600
Old Code Rule 10315

[7]In cases proceeding under the Customer Code Rule 12800, the Discovery Production Lists do not apply. In these cases, see Customer Code Rule 12800(d) for guidance with discovery.

[8]Industry Code Rule 13505 through and including Rule 13514.

[9]For questions about motion practice under the Old Code, please contact your case administrator.

## Responding to Motions

Parties have 10 days from the receipt of a written motion to respond to the motion, unless the moving party agrees to an extension of time, or the Director or the panel decides otherwise. Responses to written motions must be served directly on each other party, at the same time and in the same manner. Responses to written motions must also be filed with the Director, with additional copies for each arbitrator, at the same time and in the same manner in which they are served on the parties.

## Motions to Dismiss

FINRA Dispute Resolution does not have a rule that expressly addresses motions to dismiss claims before a hearing on the merits. Therefore, for cases proceeding according to the Old Code, Customer Code, or Industry Code, the response to a motion to dismiss will not be due until the panel sets a deadline for the response.

Very truly yours,

Nene E. Ndem
Case Administrator
561-416-0277 Fax:301-527-4868

cc: All Respondents

NEN:SS2:LC39G
idr:11/07
Enclosure
CC:

Andrew P. Campbell, Gayle S. Bullard
Campbell Gidiere Lee Sinclair & Williams, 2100-A SouthBridge Parkway, Suite 450, Birmingham, AL 35209

RECIPIENTS:

Corporate Legal Department, AXA Equitable Life Insurance Company
AXA Equitable Life Insurance Company, 1290 Avenue of the Americas, New York, NY 10104

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AXA DISTRIBUTORS, | ) | |
| LLC and AXA ADVISORS, LLC., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | |
| GAYLE S. BULLARD, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) |
| COUNTY OF NEW YORK | ) |

### AFFIDAVIT OF WILLIAM C. MILLER

Comes now William C. Miller, who, upon being duly sworn, does depose and say as follows:

1.    My name is William C. Miller. I am competent to make this affidavit, and I have personal knowledge of the facts stated below.

2.    I am a Senior Vice President of and am currently employed by AXA Distributors, LLC ("AXA Distributors") as Chief Sales Officer, and have been employed by AXA Distributors since 2006. As Senior Vice President, I have access to and have reviewed business records disclosing the information herein.

3.    AXA Distributors markets AXA Equitable Life Insurance Company annuities at a wholesale level. AXA Distributors does not engage in retail sales of AXA Equitable Life Insurance Company products. AXA Distributors does not issue any investments. AXA Distributors does not provide order execution for retail clients.

Page 1 of 3

246551

4.    Gayle S. Bullard, Peggy J. Cole, Beverly L. Davis, Jesse D. Dean, Jacqueline P. Draughon, Hans D. Erbskorn, Charlene B. Erbskorn, Rabon W. Harrison, Ruth K. Harrison, James H. Hausman, Donald W. Hendley, Edward L. Hinson, Jeanette C. Hinson, Gayle O. Hudson, Kenneth W. Joyner, James R. Little, Linda D. Little, Sarah A. Martin, Sarah McCord, Jerry Mims, Nina Sue New, Hazel J. Odom, Mary Harriett Patton, Jack R. Perry, Freddy Quattlebaum, Carolyn H. Saunders, Roy W. Saunders, Earl T. Senn, Edna Senn, Reuben S. Shelley, June K. Shelley, Anita Carol Shirah, Danny L. Snell, Floyd Starling, Virginia Starling, Willa C. Storey, Jeanette S. Sutherland, Mary E. Todd, Betty M. Vann, F. Terry Walden, Shirley J. Walker, Helen S. Hall Walworth, Debra Rebecca White, Pheobie D. Wilson and Charles H. Woodham (collectively, the "Claimants") have never been customers of AXA Distributors, its agents or representatives.

5.    None of the Claimants have purchased investments from AXA Distributors.    AXA Distributors has never offered any investment for sale to any of the Claimants.

6.    AXA Distributors has never possessed any cash or securities of the Claimants.    AXA Distributors has never maintained accounts for the Claimants.    AXA Distributors has never entered into a contract with any of the Claimants. None of the Claimants have submitted investment applications to AXA Distributors.    AXA Distributors has never provided account statements or confirmations to the Claimants. AXA Distributors has never sent written correspondence to the Claimants.

7.     None of the brokers through whom the Claimants have purchased investments were employees, agents, representatives or associated persons of AXA Distributors. In addition, none of the brokers through whom the Claimants purchased investments were appointed with AXA Distributors.


FURTHER AFFIANT SAITH NOT.


Executed on this the 12 day of March, 2008.

William C. Miller

Sworn to before me this the 12th day of March 2008.

_Susan J. Stoveland_
Notary Public
My commission expires:


SUSAN J. STOVELAND
Notary Public - State of New York
No. 01ST6171954
Qualified in Dutchess County
My Commission Expires July 30, 2011