**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| AXA DISTRIBUTORS, | ) | |
| LLC and AXA ADVISORS, LLC., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:08-cv-00188 |
| | ) | |
| GAYLE S. BULLARD, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

**INTRODUCTION**

Plaintiffs AXA Distributors, LLC and AXA Advisors, LLC seek to enjoin Defendants from pursuing a FINRA arbitration proceeding. Defendants have responded by asking this Court either to dismiss this action or to order Plaintiffs to proceed with the arbitration. There is no express arbitration agreement between the Plaintiffs and the Defendants, nor is there any implied arbitration agreement under the Code of Arbitration Procedure. Therefore, the Defendants have demonstrated no ground to dismiss this action or to compel arbitration of their claims against the plaintiffs, and their motion is due to be denied.

By filing their motion as an alternative request to dismiss or to compel arbitration, the Defendants ask the Court to simultaneously apply two different standards of review to two distinct sets of facts. In considering the motion to dismiss under Rule 12(b)(6), this Court is limited to the facts properly pleaded in the Plaintiffs' Complaint, and must draw every permissible inference in favor of the Plaintiffs. *See Kelly v. Owens*, No. 2:05cv1150, 2006 WL 3496652, at *8 (M.D. Ala. 2006). In considering the motion to compel arbitration, the Court

may consider additional facts established through documentary and affidavit evidence submitted by the Plaintiffs and Defendants.[1]  Thus, each aspect of Defendants' motion requires separate consideration.

**STATEMENT OF FACTS FOR PURPOSES
OF THE MOTION TO DISMISS**

On or about January 30, 2008, Defendants filed a Statement of Claim in FINRA Arbitration No. 08-00280 against Plaintiffs, asserting various causes of action and seeking damages in excess of $1,000,000.  (Complaint ¶ 12).  The Statement of Claim alleges that the Defendants' claims arise out of the purchase of certain variable annuity investments from the Plaintiffs in reliance on various misleading representations or omissions made by the Plaintiffs. (*Id.*).[2]

Neither of the Plaintiffs sold the annuities at issue to the Defendants.  (*Id.* ¶ 14).  The Defendants have never been customers of AXA Advisors or AXA Distributors, their agents or representatives.  (*Id.*).  Neither AXA Advisors nor AXA Distributors has ever conducted business with any of the Defendants.  (*Id.*).  Rather, each of the Defendants purchased the variable annuity contracts at issue through Maxine Chappell and Ann Holman, former registered representatives with Raymond James Financial Services, Inc. ("Raymond James")  (*Id.* ¶ 15). Neither Maxine Chappell nor Ann Holman has ever been an agent, employee, representative or associated person of the Plaintiffs.  (*Id.* ¶ 16).  In addition, neither Maxine Chappell nor Ann

---

[1] Defendants' motion implicates yet a third prong of analysis when it makes the conclusory allegation that this Court lacks subject matter jurisdiction.  Defendants, however, cite no case nor provide any viable reason why subject matter jurisdiction is lacking in this Court.  Rather, the gravamen of  their dismissal motion appears to be that the Plaintiffs have not stated an actionable claim for injunctive relief.

[2] In their Motion to Dismiss, the Defendants acknowledge that they erroneously named AXA Advisors, LLC as a respondent in the arbitration case, and state that they "do not intend to pursue claims against AXA Advisors, LLC." *See* Motion at p. 10, n. 6.  The remainder of their motion, however, continues to refer to both Plaintiffs so this Opposition will do likewise.

Holman has ever been appointed with the Plaintiffs as a representative or agent. (*Id.* ¶ 17). Instead, both Maxine Chappell and Ann Holman were registered representatives of broker dealer Raymond James, and they were appointed with AXA Equitable, a non-party, in a limited capacity as non-exclusive insurance agents for the purpose of selling AXA Equitable products. (*Id.*).

None of the variable annuity contracts that are at issue in the arbitration proceeding were issued by AXA Distributors or AXA Advisors. (*Id.* ¶ 17). Indeed, neither of the Plaintiffs has ever issued any variable annuities. (*Id.*). Neither AXA Distributors nor AXA Advisors published the prospectus that is the subject of the Defendants' arbitration claims. (*Id.*).

AXA Distributors markets AXA Equitable Life Insurance Company annuities at a wholesale level. (*Id.* ¶ 18). AXA Distributors does not engage in retail sales of AXA Equitable Life Insurance Company products. (*Id.*) AXA Distributors does not provide order execution for retail clients. (*Id.*). Accordingly, AXA Distributors has never offered an investment for sale to the Defendants. (*Id.*) AXA Advisors is a brokerage firm which engages in retail sales of AXA Equitable Life Insurance Company products, among other investments, but it had no involvement whatsoever in the sale of the annuities at issue to the Defendants. (*Id.* ¶ 19).

The Plaintiffs have never:

--      sold any investment to the Defendants (*Id.* ¶ 20).

--      provided any brokerage services to any of the Defendants (*Id.*).

--      received investment applications from the Defendants (*Id.* ¶ 21).

--      entered into a contract with or maintained an account for the Defendants (*Id.* ).

--      possessed any cash or securities of the Defendants. (*Id.*).

--      provided account statements or confirmations to the Defendants (*Id.*) or;

--    sent written correspondence to the Defendants in connection with the annuity contracts at issue.  (*Id.*).

There is no written or oral agreement to arbitrate between the Plaintiffs and Defendants, and the Plaintiffs have never communicated any agreement or intention to arbitrate any claims with the Defendants.  (*Id.* ¶ 22).  The Plaintiffs are FINRA members.  (*Id.* ¶ 23).

## ARGUMENT REGARDING MOTION TO DISMISS

The Defendants ask this Court to dismiss this action on the grounds that the Court has no subject matter jurisdiction and the complaint fails to state an actionable claim.  Both of these grounds are based upon the general contention that FINRA, rather than this Court, is the only forum that is authorized to decide the arbitrability of the Defendants' claims against the Plaintiffs.  This general contention is based upon a series of premises and arguments that are not consistent with the facts established in the Plaintiffs' Complaint or are not legally valid.  The Complaint does establish subject matter jurisdiction and does state a cause of action upon which relief may be granted.  For both reasons, the motion to dismiss is due to be denied.

**I.    This Court Has Subject Matter Jurisdiction Over This Action.**

Plaintiffs allege that this Court has subject matter jurisdiction over this action by virtue of the diversity of citizenship among the parties and the requisite amount in controversy.  *See* Complaint ¶ 10.  The citizenship of the parties and the amount in controversy are both alleged in the Complaint.  *See id. at* ¶¶ 2-9 and 13.  Neither fact is disputed in the motion to dismiss.

The relief sought in the Complaint is unquestionably within the purview of this Court's subject matter jurisdiction.  The issue of whether an agreement creates a duty for the parties to arbitrate a particular dispute, "is undeniably an issue for judicial determination."  *AT&T Tech. v.*

*Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Numerous courts have granted declaratory and preliminary injunctive relief to stop a party from proceeding in arbitration with a dispute that is not arbitrable. *See, e.g. Wheat, First Securities Inc. v. Green,* 993 F.2d 814, 816 (11th Cir. 1993); *Gibraltar Sec. Co. v. Bitter,* No. 97-1587-CIV-T-17B, 1997 WL 728086, *5 (M.D. Fla. 1997); *Dean Witter Reynolds, Inc. v. Goyette,* 25 F. Supp. 2d 1344, 1347 (M.D. Fla. 1996); *Dean Witter Reynolds, Inc. v. Pollack,* No. 96-6397, 1996 WL 1044969, *4 (S.D. Fla. 1996); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen,* 62 F.3d 381, 383 (11th Cir. 1995).

The Plaintiffs have satisfied their burden of demonstrating affirmatively that this Court has subject matter jurisdiction over this action. This aspect of the motion to dismiss is due to be denied.

## II.    The Complaint States An Actionable Claim For Injunctive and Declaratory Relief.

The Complaint asserts a claim for injunctive, declaratory, and related relief from the continued prosecution of a FINRA arbitration case initiated by the Defendants. Boiled down to its essence, the Plaintiffs' claim for relief is based upon the fact that they have no contractual or statutory obligation to arbitrate the claims that the Defendants have attempted to assert before FINRA. Absent such an obligation, the Plaintiffs are subjected to irreparable harm by having to participate at all in the arbitration proceeding.

The Complaint meets the requisite pleading requirements for injunctive and declaratory relief.[3] The Complaint sets forth facts demonstrating that there is no basis for the Plaintiffs to participate in the arbitration case initiated by the Defendants. Consequently, this Court should

---

[3] The facts and law supporting the appropriateness of injunctive and declaratory relief are discussed more fully in the materials submitted in support of Plaintiffs' Motion For Preliminary Injunction, which is incorporated by reference herein.

enjoin the Defendants from proceeding with the arbitration or declare that the Plaintiffs have no

obligation to arbitrate.  The Defendants' arguments that arbitration is required are not supported

by the facts or the applicable law.

**A.  The Issue of Plaintiffs' Obligation to Arbitrate Is Not Reserved for the FINRA Director Of Arbitration.**

The liberal federal policy in favor of arbitration agreements does not divest the federal

courts from determining threshold  questions of arbitrability.  Only *after* a court has determined

that a dispute should be resolved by an arbitrator, then will the arbitrator evaluate the parties'

substantive claims; but "[i]t was for the court, not the arbitrator, to decide in the first instance

whether the dispute was to be resolved through arbitration." *AT&T Tech.*, 475 U.S. at 651.   The

Supreme Court solidified its position regarding arbitrability in 1995 when it held that, because a

party "did not clearly agree to submit the question of arbitrability to arbitration, the Court of

Appeals was correct in finding that the arbitrability of the ... dispute was subject to independent

review by the courts."  *First Options of Chicago v. Kaplan*, 514 U.S. 938, 947 (1995).   The

*Kaplan* decision clearly distinguishes the question of *who* should decide arbitrability from the

question of *whether* a specific dispute falls within the scope of a valid arbitration agreement,

holding that the former inquiry is properly submitted to the courts.  *See id.* at 944-45.  Where

parties have not clearly agreed to submit a dispute to arbitration, courts should be hesitant to give

arbitrators the power to force a party to arbitrate a matter they would rather a judge decide.  *Id.*

More recently, the Supreme Court has described questions of arbitrability as "gateway

dispute[s] about whether the parties are bound by a given arbitration clause," which are "for a

court to decide."   *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("a

disagreement about whether an arbitration clause in a concededly binding contract applies to a

particular type of controversy is for the court."). The Eleventh Circuit has agreed, stating that "[t]his rule makes imminent sense." *Terminix Interim Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005). Accordingly, here, there can be no question that this Court has the obligation to decide the issue of arbitrability.

Defendants' motion to dismiss ignores the important distinction between *who* decides if a valid arbitration agreement exists between two parties and *whether* a particular dispute is arbitrable when a valid arbitration agreement does exist. The Supreme Court has clearly established that courts are to undertake the initial inquiry of whether a valid arbitration agreement exists. Thereafter, FINRA Rule 12203(a) may apply to the latter inquiry, authorizing the FINRA Director to decide if a particular dispute is arbitrable after a court has determined that a valid arbitration agreement exists.

Courts regularly grant injunctive relief as part of a determination whether a dispute is arbitrable under the parties' agreement to arbitrate. Indeed, the Third Circuit has held that if a party has a right to a court's determination of arbitrability, and the court prematurely compels arbitration of a non-arbitrable issue, the harm to the plaintiff would be "*per se* irreparable." *PaineWebber, Inc. v. Hartmann*, 921 F.2d 517, 515 (3d Cir. 1990). Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have irrefutably placed this decision in the hands of the courts. This Court, not the FINRA Director of Arbitration, must decide whether this dispute is arbitrable.

**B.    The Code of Arbitration Procedure Does Not Constitute An Agreement To Arbitrate The Defendants' Claims Against The Plaintiffs.**

A fundamental principle governing the arbitrability of disputes is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." *See, e.g., United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). The Defendants, however, contend that the mere fact that Plaintiffs are FINRA members obligates them to arbitrate the claims that the Defendants have asserted in the arbitration proceeding. In reaching this conclusion, they seize on language from cases that turn on facts readily distinguishable from the facts of the case at bar.

Although courts have observed that the NASD Code may suffice as an enforceable agreement where none otherwise exists, those cases have involved disputes between investors and the FINRA member organization with which they had direct dealings. Plaintiffs do not dispute that as FINRA members, they are bound by the provisions of the FINRA Code of Arbitration Procedure when applicable. Those provisions, however, are not applicable to the Defendants' claims.

Pursuant to Rule 12200 of the FINRA Code of Arbitration Procedure, member firms must arbitrate a dispute where it arises "between a *customer* and a member or associated person of a member; **and** the dispute arises in connection with the business activities of the member or the associated person." FINRA Code of Arbitration Procedure, Rule 12200 (emphasis added). In examining whether this provision requires the arbitration of a specific dispute, the Eleventh Circuit has held that Rule 12200 sets forth a two-part test that must be applied by the courts: the Defendants must show that (1) the claim involves a dispute between a customer and a member or associated person of a member, **and** (2) that the dispute arises in connection with the business activities of the member or the associated person. *See Wheat, First Securities Inc. v. Green,* 993 F.2d 814, 820 (11th Cir. 1993); *MONY Securities Corp.*, 390 F.3d at 1343 (*quoting Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004)).

Here, Defendants' Statement of Claim involves a dispute about annuities issued by AXA Equitable and sold to the Defendants by associated persons of Raymond James. The Defendants were not customers of the Plaintiffs, and this dispute does not arise in connection with the Plaintiffs' business activities. Simply put, nothing in the Defendants' motion to dismiss satisfies the two-part test and defeats the Plaintiffs' allegation that Defendants should be enjoined from pursuing their claims in arbitration.

### 1.    Defendants Are Not and Have Never Been Customers of the Plaintiffs.

Defendants have never engaged in a business relationship or transaction with AXA Advisors or AXA Distributors and therefore are not customers of these companies. The Eleventh Circuit was first presented with the issue of whether investors were customers of a member firm pursuant to FINRA rules in *Wheat, First Securities Inc. v. Green,* 993 F.2d 814 (11th Cir. 1993). The investors in *Wheat First* held securities trading accounts with Marshall & Co. Securities, Inc ("Marshall & Co."). *Wheat, First*, 993 F.2d at 815. The investors' claims related to fraudulent misrepresentations made by an agent with Marshall & Co. in connection with their purchase of certain securities. *Id.* at 815-16. After the purchases at issue, Wheat First merged with Marshall & Co., and both the agent and the investors' accounts thereafter transferred to Wheat First. *Id.* at 816. The investors later initiated a NASD arbitration against Wheat First arguing, *inter alia*, that Wheat First was required to arbitrate because the investors fit within the meaning of the term "customer" under FINRA rules.

Like the case presently before this Court, in *Wheat First* the investors and the member firm had no customer relationship "at the time of the alleged events that [the investors sought] to arbitrate." *Id.* at 818. In rejecting the investors' claims that the court should determine their

customer status under FINRA rules as of the time that the arbitration was filed, the court held as

follows:

> We believe that the rule preferred by Appellants would do
> significant injustice to the reasonable expectations of NASD
> members. We cannot imagine that any NASD member would have
> contemplated that its NASD membership alone would require it to
> arbitrate claims which arose while a claimant was a customer of
> another member merely because the claimant subsequently became
> its customer.   The potential for abuse under this scheme is
> manifestly apparent from the facts of the present case. We
> therefore hold that customer status for the purposes of the
> 'customer' requirement of NASD Code §§ 1 and 12(a) must be
> determined as of the time of the events providing the basis for the
> allegations of fraud.  The Appellants were not customers of Wheat
> First at the time of the allegedly fraudulent Central stock
> transactions.  Thus, they cannot invoke the NASD Code to compel
> Wheat First to arbitrate.

*Id.* at 820.

In the instant case, the facts favoring Plaintiffs are even stronger than in *Wheat First*.

Whereas in *Wheat First* the investors were not customers at the time of the transactions at issue,

here the Defendants <u>never</u> became customers of the Plaintiffs at any time.  As established in the

Complaint, neither of the Plaintiffs sold any of the annuities at issue to the Defendants.  Each of

the Defendants purchased the variable annuity contracts at issue through registered

representatives with Raymond James.  Moreover, AXA Advisors and AXA Distributors did not

issue the variable annuity contracts or publish the prospectus for those contracts. Accordingly,

there is no relationship whatsoever between the Defendants and AXA Distributors or AXA

Advisors.  Even more so than the investors in *Wheat First* were not customers who could compel

arbitration, the Defendants here are not customers of the Plaintiffs.        The Eleventh Circuit

has more recently addressed the issue of whether investors were customers of a member firm

pursuant to FINRA rules.  *See Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1367

(11th Cir. 2004); *MONY Securities Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004). Neither of these cases, however, detract from the holding and result in *Wheat First*. In both *MONY Securities* and *King,* the member firms contended that the investors were not their customers, despite the fact that the investors were customers of the member firms' associated persons. *See MONY Securities Corp.*, 390 F.3d at 1342; *King*, 386 F.3d at 1366. In each of those cases, the critical factor in the court's inquiry was the undisputed evidence that the investors purchased investments from an associated person of the member firm. *See MONY Securities Corp.*, 390 F.3d at 1344 ("We thus hold that the Bornsteins are customers under the applicable NASD rules because it is undisputed that they are customers of Keller, and that Keller was an associated person with MONY."); *King*, 386 F.3d at 1370 ("The parties agree that King dealt with [IFG's associated person], so King, in turn, dealt with IFG. The Court, therefore, holds that King has satisfied the first requirement of [NASD] Rules 10101(c) and 10301(a) by demonstrating that she is a customer and IFG is a member."). Because each of these cases involved undisputed evidence that the investors purchased securities from the member firm's associated persons, the court found that that the investors were customers of the member firms pursuant to NASD rules. *See Id.*

Although the *MONY Securities* and *King* decisions found that the investors were "customers," those results arose from different facts from those presented in the case at bar. There is no dispute that the Defendants in the instant action did not purchase securities from and had no relationship with an associated person of either AXA Distributors or AXA Advisors. *See Id*. The Eleventh Circuit's rationale in both *MONY Securities* and *King* require a determination that the Defendants are not customers of AXA Distributors or AXA Advisors.

Other courts have also held that there must be some connection between the investors and the member firm or their associated person in order to support a finding that a customer relationship exists. Those "courts recognize that the definition of 'customer' must not be so broad that it would upset the reasonable expectations of the NASD members, as parties to the 'contract' created by the NASD rules. Instead, they look at the nature of the relationship between the investor and the NASD member or its associated person." *Contemporary Financial Solutions, Inc. v. Miller*, No. 07-cv-00793 MSK, 2007 WL 4197588, Slip op. at *4 (D. Colo. Nov. 20, 2007) (noting that cases such as *Wheat, First Securities Inc. v. Green,* 993 F.2d 814 (11th Cir. 1993) "are instructive as to how the investor's relationship with the NASD member or associate should be scrutinized, because they show what an NASD member's reasonable expectations are as to what claims should be submitted to arbitration."); *see Herbert J. Sims & Co., Inc. v. Roven*, 548 F.Supp.2d 759 (N.D. Cal. 2008) (the definition of "customer" should not "upset the reasonable expectations of FINRA members"). Specifically, the Eighth Circuit requires a finding of "some brokerage or investment relationship between the parties." *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772-73 (8th Cir. 2001).

Because the Defendants were never customers of the Plaintiffs, the arbitration of this dispute "would do significant injustice to the reasonable expectations" of the Defendants as FINRA members. *See Wheat, First*, 993 F.2d at 818. Indeed, "the potential for abuse" warned of by *Wheat First* "is manifestly apparent from the facts of the present case," as the arbitration of this dispute would lay a foundation for the arbitration of any dispute filed by any investor against any member firm, regardless of whether the investor ever dealt with that member firm in any capacity. Such injustice is not required by the FINRA Code of Arbitration Procedure. *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 773 (8th Cir. 2001) (holding that

member firm, solely by virtue of its membership in the NASD, did not agree to arbitrate a dispute that did not involve investment or brokerage services).

The Defendants cite several cases for the proposition that NASD members are obligated to arbitrate disputes with investors who did not engage in direct transactions with the member organization. In each of the cases cited by Defendants, however, the court determined that the investor had a substantial customer relationship with an "associated person" who worked for the member firm. This is the same fact situation that was present in the *King* and *MONY Securities* decisions discussed above, and which is significantly different from the facts in the case at bar.[4]

In *California Fina Group, Inc. v. Herrin*, the Fifth Circuit rested its narrow holding on the ground that the member firm "did not dispute that the [investment seller] was an 'associated person'" and concluded that the definition of "customer" is "broad enough to include persons who purchase securities from a registered representative of an NASD-member firm." 379 F.3d 311, 318 (5th Cir. 2004). Similarly, the other cases cited by Defendants address the narrow question of whether a member firm must arbitrate disputes with investors who were customers of the member firm's "associated person." *See MONY Securities Corp.*, 390 F.3d at 1340 (investors were "customers" of the member firm by virtue of being "customers" of an "associated person"); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001) (NASD rule required arbitration with investors who dealt directly with a member firm's registered representative); *O.N. Equity Sales Co. v. Cattan*, 2008 WL 361549, at *3 (S.D. Tex. Feb. 8, 2008) (investor was a "customer" of the member because the investor had a direct business relationship with the member's "associated person"). Significantly, none of the cases cited by the Defendants

---

[4] The *King* decision also noted that at least one federal court has held that "being a customer of an associated person is not, in itself, a sufficient basis for compelling arbitration with a member." *See King*, 386 F.3d at 1369 (citing *Investors Capital Corp. v. Brown*, 145 F. Supp. 2d 1302 (M.D. Fla. 2001).

broadened the definition of "customers" to include investors who never engaged in a business transaction with the member or its registered representative.

The cases cited by Defendants are clearly different from the instant case and actually support the determination that Plaintiffs are not required to arbitrate the claims asserted by the Defendants in the arbitration proceeding. The Defendants did not engage in a business relationship with the Plaintiffs or with any of their registered representatives or associated persons.

In sum, because the Defendants "had absolutely no relationship" with the Plaintiffs, the Defendants were never customers of AXA Advisors or AXA Distributors, their agents or representatives. *See Wheat First*, 993 F.2d at 818. Defendants are therefore unable to satisfy their burden of proof as to the first prong of the Eleventh Circuit's test. *See id.* at 820. Accordingly, there is no agreement to arbitrate between the Plaintiffs and Defendants, and the Defendants' claims are ineligible for arbitration.

### B. This Dispute Does Not Arise in Connection With the Business Activities of AXA Advisors or AXA Distributors.

The Defendants are also unable to satisfy the second part of the test: that the dispute arises in connection with the business activities of AXA Advisors and AXA Distributors, or their associated persons. Not all investor disputes arise in connection with a member firm's business. "[I]n the universe of member-customer disputes, only a portion will arise in connection with the member's business and only those satisfy the Code's arbitration provisions." *King*, 386 F.3d at 1370. "The NASD code does not mandate arbitration for "any claim against a member," as the defendants would have us interpret it; it mandates arbitration of any claim 'arising in connection with the business' of a member or 'in connection with the activities' of an associated person."

*A.G. Edwards & Sons, Inc. v. Clark*, 558 So. 2d. 358, 363 (Ala. 1990) (emphasis added).

The Defendant's claims do not arise in connection with the member's business. Rather, their claims arise in connection with their purchase of variable annuities issued by AXA Equitable and sold by Raymond James representatives. Neither AXA Advisors nor AXA Distributors issued or sold the annuities at issue to the Defendants.

AXA Distributors markets annuities at a wholesale level; it does not sell annuities to any retail clients and therefore did not sell to the Defendants. AXA Advisors is a brokerage firm which engages in retail sales; however, it did not engage in the sale of any annuities to the Defendants. The majority of decisions holding that investors' claims arise in connection with the business activities of a member firm predicate their holding on the fact that the member firm has a duty to supervise its associated persons as part of its business activities, and an alleged failure to supervise arises in connection with those business activities. *See MONY Securities Corp.*, 390 F.3d at 1344-45; *Multi-Financial Securities Corp.*, 386 F.3d at 1370. As previously stated, the associated persons who sold the annuities at issue in this case were <u>not</u> associated persons of the Plaintiffs. Ann Holman and Maxine Chappell were associated persons of Raymond James and were not employees, agents, representatives, appointed with, or associated persons of AXA Advisors or AXA Distributors, neither of which had a duty to supervise those individuals. As such, Defendants are unable to satisfy the second prong of the Eleventh Circuit's test, providing a second and independent ground for a finding that this dispute is not arbitrable. *See Wheat, First*, 993 F.2d at 818.

**ARGUMENT REGARDING**
**MOTION TO COMPEL ARBITRATION**

For the reasons discussed previously in this Opposition, the Plaintiffs have stated an actionable claim for injunctive and equitable relief, and the Defendants' motion to dismiss is due to be denied. The factors that require denial of the dismissal motion apply with equal force to the Defendants' motion to compel arbitration. The Defendants rely on additional materials submitted with their motion to make additional arguments about the Plaintiffs' alleged obligation to arbitrate. None of the evidentiary materials or arguments before the Court, however, affect the Plaintiffs' right to an order enjoining the arbitration proceeding.

**I.      The Defendants Have No Binding Agreement, Express or Implied, To Arbitrate Their Claims Against the Plaintiffs.**

The Defendants offer no express arbitration agreement between the parties because there is none. Rather, they offer documents and affidavits purporting to support their argument that the Plaintiffs are obligated to arbitrate under the Code of Arbitration Procedure Rule 12200. Specifically, they attempt to demonstrate that their claims arise from the business activities of AXA Distributors and that Ann Holman was an "associated person" of AXA Distributors. Neither contention is correct.

**A.      The Defendants' Arbitration Claims Do Not Arise in Connection With the Business Activities of AXA Distributors.**

AXA Distributors is a wholesale distributor for annuity products issued by AXA Equitable. *See* Accumulator Certificate Summary (Ex. C to Defendants' Motion). As a wholesale distributor, AXA Distributors provides marketing materials and pre- and post-sales support to assist brokerage firms in the marketing of AXA Equitable annuity products. *See* Ann Holman Affidavit ¶¶ 3-6 (Ex. B to Defendants' Motion).

AXA Distributors' business activities are limited to acting as a wholesale distributor of annuity products. *See* William Miller Affid. ¶¶ 3, 5 (Ex. C to Plaintiffs' Motion for Prelim. Injunction). In that capacity, AXA Distributors interacts with brokerage firms and their brokers to facilitate the marketing and selling of the annuity products. *See id.*[5] AXA Distributors has no involvement in retail sales, which means that it does not sell directly to any individual investors, including any of the Defendants. *Id.* AXA Distributors has had direct dealings with only one Defendant -- Ann Holman -- and she is expressly excluded from the relief sought in this action. Because AXA Distributors has no business activities with the Defendants, their claims cannot arise from its business activities.

Defendants' only alleged "proof" that the claims at issue arise out of AXA Distributors' business activities is the allegation that that AXA Distributors profited from Ann Holman's sales of the products at issue. That allegation, standing alone, is clearly insufficient to prove that Defendants' claims arise out of AXA Distributors' business activities. Moreover, Defendants have offered no relevant evidence to that effect. Nonetheless, in support of their allegations, Defendants cite to a May 1999 prospectus for an Income Manager payout annuity contract. (Ex. C to Defendants' Motion). This prospectus, however, has no relevance whatsoever to Defendants' claims. None of the Defendants purchased an Income Manager annuity contract, thus, none of the Defendants were provided with an Income Manager prospectus by AXA Distributors. Thus, this prospectus and its provisions, which relate exclusively to annuity

---

[5] Representatives of AXA Distributors participated in seminars and written communications designed to educate brokers regarding the features of the annuity products. *See Ann Holman Affid.* ¶¶ *4,5*). AXA Distributors' role as a wholesale distributor included providing sales ideas, hypothetical illustrations, and marketing materials to brokers selling the AXA Equitable annuity products. *See id.* *See also,* March 8, 2007 AXA Distributor letter *and* March 2, 2000 AXA Distributor letter (Exs. E and H to Defendants' Motion).

contracts that were never purchased by the Defendants or sold by Ann Holman, has no bearing on this case.

### B.    Ann Holman Is Not An "Associated Person" of AXA Distributors.

Ann Holman was a registered representative of Raymond James & Associates at the time she sold AXA Equitable annuity products to the Defendants. *See* Ann Holman Affidavit ¶ 2. In addition, Ann Holman has never been an "associated person" of AXA Distributors. *See* William Miller Affid. ¶ 7. Ann Holman does not claim to be or ever to have been an "associated person" of AXA Distributors. *See* Ann Holman Affid.

Raymond James, as the member firm with which Ann Holman was registered, was responsible under federal and state securities statutes and regulations for Ann Holman's training and supervision. AXA Distributors did not control, directly or indirectly, Ann Holman's activities in selling AXA Equitable annuity products.

The Defendants rely upon Code of Arbitration Procedure Rule 2100 to argue that Raymond James broker Ann Holman was an "associated person" of AXA Distributors because she was indirectly controlled by AXA Distributors. This assertion ignores the industry meaning and usage of "associated person" and the facts relating to the interaction between Ms. Holman and AXA Distributors. An "associated person" is a term of art used by the NASD/FINRA to specify what individuals are subject to its regulatory control. The term is an expansion of the similar term "registered representative," which refers to a securities broker who is licensed to sell securities through a particular brokerage firm.

Rule 2100's "indirect control" language does not lead, as Defendants argue, to the "undisputed" fact that Ann Holman is an "associated person" of AXA Distributors. Rather, it is undisputed that Ann Holman was an associated person of Raymond James during the time period

at issue.  *See* Ann Holman Affidavit ¶ 2.  It is likewise undisputed that Ann Holman has never been an "associated person" of AXA Distributors.  *See* William Miller Affid. ¶ 7.  The Defendants offer no evidence whatsoever in support of their baseless misconstruction of Rule 2100's "indirect control" language which would even remotely suggest that Ann Holman is an "associated person" of AXA Distributors.  Furthermore, the *Lawrence* decision cited by the Defendants does not support their interpretation of Rule 2100.  The *Lawrence* decision merely holds that a securities broker who is an independent contractor (as opposed to employee) of a brokerage firm is under the control of the brokerage firm and is therefore an "associated person." *See Lawrence v. Richman Group Capital Corp.*, 358 F. Supp. 2d 29, 33 (D. Conn. 2005).  The rationale and holding of this case demonstrates, if anything, that Ann Holman was an "associated person" for Raymond James, where she was licensed, trained, and supervised.

Beyond the shortcomings of the Defendants' frivolous argument that Ann Holman is AXA Distributors' "associated person," the facts before the Court do not demonstrate that Ms. Holman was directly or indirectly controlled by AXA Distributors -- rather, the facts before this Court indisputably demonstrate the exact opposite.  Indeed, AXA Distributors' BrokerCheck Report, attached to Defendants' Motion to Dismiss as Exhibit A, clearly demonstrates the proper application of Rule 2100's "indirect control" language in the context of broker-dealer firms.  The BrokerCheck Report further demonstrates that the definition attributed to the term of art by the Defendants' allegations is completely inaccurate.  The BrokerCheck Report lists each and every entity that AXA Distributors is directly or indirectly "in control of."   *See* (Ex. A to Defendants' Motion at p. 13).  Neither Ann Holman nor Raymond James is listed as a person or entity over which AXA Distributors has direct or indirect control.  Thus, there can be no legitimate argument that AXA Distributors controlled Ann Holman.

The evidentiary materials submitted by the Defendants demonstrate nothing more than an arms-length relationship between Ann Holman and AXA Distributors, which Ms. Holman was free to discontinue at any time, in which AXA Distributors provided sales materials and support. The facts before this Court demonstrate that AXA Distributors provided assistance to Ms. Holman but did not exercise direct or indirect control over her. In fact, Ms. Holman remained at all times under the compliance, training, supervisory authority and control of Raymond James, the brokerage firm where she was a registered representative.

Under these circumstances, there should be no serious doubt that Ann Holman was not an "associated person" of AXA Distributors. As a result, her activities do not make the Defendants customers of AXA Distributors, and her dealings with the Defendants do not constitute the business activities of AXA Distributors.

## <u>CONCLUSION</u>

The Complaint states an actionable claim for injunctive and declaratory relief. There is no express arbitration agreement and the Code of Arbitration Procedure does not require the arbitration of this dispute. Accordingly, the Defendants' claims are not arbitrable against AXA Distributors and AXA Advisors. The Plaintiffs respectfully request that the Defendants' motion for dismissal and to compel arbitration be denied.

Respectfully submitted,

/s/ Andrea Morgan Greene
A. Inge Selden III (SEL003)
John N. Bolus (BOL022)
Andrea Morgan Greene (GRE102)

Attorneys for Plaintiffs
AXA Distributors, LLC and AXA Advisors, LLC

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2602
(205) 254-1000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Andrew P. Campbell
Caroline Smith Gidiere
Campbell, Gidiere, Lee, Sinclair & Williams, PC
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209


on this the 14th day of July, 2008.


/s/ Andrea Morgan Greene
OF COUNSEL