IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AXA DISTRIBUTORS, LLC and <br> AXA ADVISORS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GAYLE S. BULLARD et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:08cv188 <br> ) <br> ) <br> ) <br> ) <br> ) |

**SURREPLY TO PLAINTIFFS' REPLY TO
DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

COME NOW, Defendants and file this Surreply to the July 30, 2008 Reply of Plaintiffs to Defendants' Response to Plaintiffs' Motion for Preliminary Injunction. In its reply, AXA Distributors seeks to completely evade liability for its role in training Ann Holman and perpetrating a fraud on Defendants through a fraudulent marketing scheme by relying on technical interpretations contrary to the well-established law and on hypotheticals, ignoring, once again, the undisputed facts of the case. In support of this Surreply, Defendants rely upon the following arguments and the affidavits attached hereto:

1.      In order to distract the Court from the undisputed fact that AXA Distributors *actually* undertook the obligation to and did provide the training to Ann Holman on the product at issue and that claims in this case arise from the training of Ann Holman by AXA Distributors to provide fraudulent misrepresentations and materials omission on sales of the Accumulator annuity, Plaintiffs cast aspersions on Defendants, alleging Defendants have misstated facts in order to avoid injunctive relief.  Defendants go to great lengths to demonstrate that AXA Distributors did not have "responsibility" for training and supervision, and posit that the repercussions would be horrendous if a distributor were to be held responsible for something it had no contractual or regulatory obligation to provide.  But here, to determine what AXA Distributors' "business activities" were, the question is not what AXA Distributors was *obligated* to provide under its contract or regulations; rather, the question is what business activities AXA Distributors *actually* undertook in this case.  **Nowhere**, in all of the many pleadings and affidavits that AXA Distributors has filed, has it alleged *that it did not provide the training at issue* or that *Raymond James (or anyone else for that matter) actually provided the training to Ann Holman on the Accumulator*.  AXA Distributors does not allege any of those things, because it cannot allege them, regardless of what its formal obligations were under the FINRA regulations

or its selling agreement with Raymond James. The simple truth of the matter is that AXA Distributors trained Ann Holman to make fraudulent representations to her customers, resulting in damage to Defendants as a result of AXA Distributors' fraudulent course of business and negligent training. Its allegations are an attempt to distract the court from the fact that the claims alleged arise out of the ***actual*** business activities of AXA Distributors with regard to the Accumulator annuity by Ann Holman.

2.   The undisputed testimony of Christine Mallul and Maxine Chappel also indicates that training brokers was part of AXA Distributors' business activities. *See* Affidavit of Christine Mallul, attached as Exhibit A, at ¶¶ 3, 4, 6; Affidavit of Maxine Chappel, attached as Exhibit B, at ¶ 4 ("AXA Distributors trained me directly regarding how to sell the AXA Accumulator product. . . . I had no other training besides the training provided by AXA Distributors representatives, and I sold the AXA Accumulator annuities just as I was trained by AXA Distributors.").

3.   Furthermore, Plaintiffs cannot get around the fact that the Eleventh Circuit has twice reviewed the definition of "customer" under the NASD Code and has twice concluded that the definition is broad and excludes only "brokers" and "dealers." *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1368 (11th Cir.

2004); *MONY Securities Corp. v. Bornstein*, 390 F.3d 1340, 1343-44 (11th Cir. 2004). The analysis leading to this conclusion is based on the clear language of the Code and on the use of more limiting language in other places in the Code, which indicates that the NASD made an intentional decision to keep the definition of "customer," for the purposes of compelling arbitration, broad. *King*, 386 F.3d at 1368. And, as set forth in Defendants' Motion to Strike, reliance upon extraneous opinion testimony is inappropriate where the language is clear and unambiguous as the Eleventh Circuit concluded in *King* and *MONY*. *See Shadrick v. Johnston*, 571 So. 2d 1008, 1012 (Ala. 1990) (When the language of a contract "is clear and unambiguous, its effect can be determined as a matter of law and extrinsic evidence is inadmissible to vary its terms."). In fact, the Eleventh Circuit has specifically stated that the NASD Code is unambiguous and that extrinsic evidence of the definition of "customer" is inadmissible. *King*, 386 F.3d at 1368 n.3 ("The Court will not consider the extrinsic evidence presented by IFG regarding the purported intent of the NASD because the rules at issue are clear and unambiguous.").

4. Plaintiffs allege, in their brief and the accompanying affidavits, that AXA Distributors does not market the contracts on a retail level as a part of its business. That is a complete misstatement of fact. As set forth in the attached

affidavit of Christine Mallul, another unaffiliated broker based in Chicago, Illinois, representatives of AXA Distributors met directly with her clients for the purpose of selling the AXA Accumulator annuity, and they participated in telephone conferences with her clients to answer their questions about the products. Accordingly, AXA Distributors, as part of their business activities, in fact undertook to market the products at the retail level. *See* Mallul Aff., Exhibit A, at ¶ 5.

  5.  Furthermore, all doubts concerning arbitrability must be resolved in favor of arbitration. *Carroll v. W.L. Petrey Wholesale Co., Inc.*, 941 So. 2d 234, 236-37 (Ala. 2006); *see also John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 59 (2d Cir. 2001) ("Even if we were to accept [the NASD member's] interpretation of Rule 10301, at best it would raise an ambiguity as to the definition of "customer." In the face of such ambiguity, we would be compelled to construe the provision in favor of arbitration . . . ."); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927 (1983). So, to the extent that there is any ambiguity with regard to the definition of "customer," which there clearly is not, the doubts must be resolved in favor of arbitration.

      For the above reasons and the reasons set forth in Defendants' Opposition to the Motion for Preliminary Injunction, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

      Respectfully Submitted,

      /s/ Caroline Smith Gidiere
      One of the Attorneys for Defendants

Andrew P. Campbell
Caroline Smith Gidiere
Campbell, Gidiere, Lee, Sinclair
    and Williams, PC
2100A SouthBridge Parkway, Suite 450
Birmingham, Alabama  35209
(205) 803-0051
Fax: (205) 803-0053
acampbell@cgl-law.com
cgidiere@cgl-law.com

## CERTIFICATE OF SERVICE

     I hereby certify that on July 31, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:


Andrea Morgan Greene, Esq.
Armistead Inge Selden, III, Esq.
John Norman Bolus, Esq.
**MAYNARD, COOPER, & GALE, P.C.**
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL  35203


                                               /s/ Caroline Smith Gidiere
                                               Of Counsel

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AXA DISTRIBUTERS, LLC and<br>AXA ADVISORS, LLC | * * * | |
| Plaintiffs, | * * | |
| v. | * * | 1:08-cv-00188 |
| GAYLE S. BULLARD, et al., | * * | |
| Defendants. | * | |

## AFFIDAIVIT OF CHRISTINE MALLUL

1. My name is Christine Mallul. I am over the age of twenty-one and have personal knowledge of the facts set forth below.

2. I am a registered representative of David A. Noyes & Company in Chicago, Illinois. I have been a broker since 1983.

3. Beginning in 1998, I began attending seminars conducted by Mr. Bron Urbanick, a representative of AXA Distributers, LLC, on the AXA Accumulator product. I attended over ten such seminars. Additionally, in 1999, I attended a two day seminar in Atlanta, Georgia sponsored by AXA, then The Equitable, in which I received intensive training over a two-day period.

4. All of the training I received on the Accumulator product was provided by AXA Distributers, LLC. AXA Distributers and Bron Urbanick instructed me on how to sell the product, what to say about the product, and how it worked. AXA Distributers provided all of the materials on the Accumulator that I was to provide to clients and trained me on the materials, instructing me on what to tell my clients about the literature and then, later, about their account statements.

5. Mr. Urbanick, AXA Distributers' representative, met in person my clients and me on a number of occasions and actually made the sale of the products to my clients. Mr. Urbanick also participated in a number of conference calls with me and my clients when my clients had questions about the product, how it worked, the literature about the products, and/or their account statements. When I would call Mr. Urbanick upon behalf of my clients with questions they raised, Mr. Urbanick would instruct me on what to tell the client.

6. Through the training, direct communications, and literature they provided, AXA Distributors had control over how I sold the annuities to my clients and what I told them about the product.

_____
Christine Mallul

## CERTIFICATE BY NOTARY PUBLIC

STATE OF ILLINOIS      )
COUNTY OF              )

Comes now the below signed Notary Public in and for the State of Illinois, and hereby certifies that Christine Mallul, having been duly sworn, says and deposes, that the facts set out in the above affidavit are true and correct.

_____
Notary Public

My Commission expires on the 31 day of July, 2008.

OFFICIAL SEAL
DOROTHY L KOMLANC
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/07/10

# EXHIBIT "B"

## AFFIDAVIT OF MAXINE CHAPPELL

1. My name is Maxine Chappell. I am over the age of twenty-one and have personal knowledge of the facts set forth below.

2. I was a partner of Ann Holman's at Raymond James & Associates, where I was also a broker. Like Ann, I sold AXA Accumulator annuities to clients.

3. While I was at Raymond James, my contacts for selling the AXA Accumulator product were with representatives of AXA Distributors, LLC.

4. AXA Distributors trained me directly regarding how to sell the AXA Accumulator product. I attended training seminars conducted by AXA Distributors. During the training seminars, AXA Distributors explained the product to me and taught me how to sell the product to my clients. I had no other training besides the training provided by AXA Distributors representatives, and I sold the AXA Accumulator annuities just as I was trained by AXA Distributors.

5. I also spoke with AXA Distributors representatives at other times about the product. Representatives of AXA Distributors gave me quotes and illustrations on the AXA Accumulator product. AXA Distributors provided me with all of the literature or prospectuses I received regarding the Accumulator annuities. Through the training, direct communications, and literature they provided, AXA Distributors had complete control over how I sold the annuities to my clients and what I told them about the product.

1

6. AXA Distributors representatives told me that the AXA Accumulator annuities had a guaranteed minimum 6% return on the client's investment at the end of the annuity term, as long as the holder of the annuity kept it for the full term. They represented to me that this return was not merely applicable to the death benefit, but that it applied to the account value. AXA Distributors trained me that the AXA Accumulator annuity was superior to a mutual fund because it provided a guaranteed return and was safer than a mutual fund.

7. I made representations to my clients based solely on the information AXA Distributors provided me about the Accumulator annuity product. Whenever my clients had questions about the product, I turned to AXA Distributors for information and relayed it to my clients.

8. Whenever I sold an Accumulator annuity to a client, AXA Distributors directly provided me with the annuity certificate and a packet of materials for the client, with instructions to go over the material in the packet with the client and to call AXA Distributors with any questions.

I declare under penalty of perjury pursuant to the laws of the State of Alabama that the foregoing is true and correct. Executed this 31st day of July, 2008, in Dothan, Alabama.

*Maxine Chappell* (signature)
Maxine Chappell

STATE OF ALABAMA )
COUNTY OF Henry )

Before me, Maxine Chappell, who being by me first duly sworn, deposes and says that the facts alleged in the foregoing Affidavit are true and correct to the best of her knowledge and belief.

Sworn to and subscribed to before me this 31 day of July, 2008.

*Cecilia A. Gordon* (signature)
Notary Public
My Commission Expires: 1-25-11

3